Roger Trenton DAVIS, Appellee,

v.

Jack F. DAVIS, Director, Virginia State Department of Corrections, and R. M. Muncy, Superintendent, Powhatan Correctional Center, Appellants.

No. 77–1782.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 15, 1977.

Decided Oct. 30, 1978.

Before FIELD, Senior Circuit Judge, WIDENER and HALL, Circuit Judges.

WIDENER, Circuit Judge:

This is an appeal from the issuance of a writ of habeas corpus in which case the district court set aside two sentences as being so disproportionately excessive as to constitute cruel and unusual punishment under the Eighth Amendment.

Roger Trenton Davis was convicted in a trial by jury in Wythe County, Virginia, of the offenses of distribution of marijuana and possession of marijuana with intent to distribute. In his petition for a writ of habeas corpus, Davis attacked the severity of the sentences he received, as well as making other constitutional claims.[1] He contends that in this appeal the offense committed was minor; the facts constituting the case against him reveal a relatively insignificant crime for which the Commonwealth's sanction should be correspondingly slight; and, in view of the claimed relative innocuousness of the act of selling marijuana in the amounts proven, the sentences imposed were disproportionate to the offense. While the district court granted the writ, we do not agree and we reverse.

I

Davis was sentenced to two twenty year terms, to be served consecutively, and fined $10,000 for each of the two counts. As is the practice in Virginia, the jury sentenced Davis upon its finding of guilt, and the court entered judgment on that verdict. Va.Code Ann., § 19.2–295.[2]

The jury awarded the sentence after hearing evidence which revealed Davis to be a dealer in drugs who sold them to a man who had informed Davis that the drugs were being procured for distribution to inmates in a state penal institution. Davis sold not only marijuana but also two other drugs in pill form, all to be taken to the inmates.

Robert H. Herring, Jr., Asst. Atty. Gen., Richmond, Va. (Anthony F. Troy, Atty. Gen. of Virginia, and K. Marshall Cook, Asst. Atty. Gen., Richmond, Va., on brief), for appellants.

Edward L. Hogshire, Charlottesville, Va. (Paxson, Smith, Boyd, Gilliam & Gouldman, Charlottesville, Va., Charles G. Evans, Anchorage, Alaska, John C. Lowe, Lowe & Gordon, Ltd., Charlottesville, Va., on brief), for appellee.

---

1. Davis made several additional constitutional claims which were dismissed by the district court. He does not appeal from their dismissal, and the issues are not before this court. The district court's opinion is reported at 432 F.Supp. 444 (W.D.Va.1977).

2. See *Vines v. Muncy*, 553 F.2d 342 (4th Cir. 1977).

The evidence against Davis centered principally in the testimony of Danny Ray Eads. Eads, an inmate at Bland prison farm, approached prison officials with a proposition concerning drug traffic in Pulaski and Wythe Counties. Eads was concerned by his wife's use of drugs (she had become a drug user after his confinement) and the consequent effect on the welfare of his two year old child; he told authorities that he desired a furlough from prison in order to assist in the exposure and arrest of those supplying drugs to his wife and any illicit drug distributor in the area, including Davis who Eads identified as an active drug dealer in Wythe County.

The Commonwealth accepted Ead's offer of assistance and allowed him a furlough for the purpose of apprehending drug traffickers in Pulaski and Wythe Counties. During the time of the investigation, Eads was under strict surveillance. As part of the investigation, for example, he wore a transmitter strapped to his body so that the police could hear and record his conversations with drug dealers.

Eads met Davis on the streets of Wytheville in front of a "head shop," a store specializing in the sale of drug paraphernalia. Eads testified that he and Davis had become acquainted in jail while Davis was in jail, having been arrested on a different drug offense. He told Davis that he wished to purchase some drugs for himself and for some mutual friends at Bland prison farm. Davis responded that he thought he could provide Eads with the contraband he needed, left, and returned ten minutes later. Eads then accompanied Davis to the latter's home.

There, the two men went into Davis' bedroom. Davis removed a portion of marijuana from a large plastic bag, weighed it on a small scale, and gave three ounces of marijuana to Eads in return for $74.00. Also, at that time, Davis gave Eads the drug pills which included L.S.D. and another illicit controlled drug. This conversation between Eads and Davis was transmitted via Ead's hidden transmitter and recorded by the police. That recording, as well as the recording of Ead's initial contact with Davis, was played to the jury. Thus, the jury was intimately familiar with the conversation accompanying the transaction, including the participants' recognition that the purpose of the drug acquisition was for distribution to inmates in one of the Commonwealth's penal institutions, as well as Davis' gratuitous statement that he would like to blow up the state police headquarters in Wytheville.

On October 26, 1973, law enforcement officials raided the Davis residence. In Davis' bedroom they discovered two sets of scales and other drug paraphernalia. A small plastic bag containing 8 grams of marijuana was found in a jacket. About fifteen feet outside of the bedroom window, officers discovered a large plastic bag, similar to the receptacle from which Davis drew the marijuana sold to Eads, containing 168 grams of marijuana. Davis was discovered hiding in a closet and told the officers they could not search anything except his room.

Faced with this evidence, the Wythe County jury was obviously impressed by Davis' complete involvement in the business of selling drugs. While not given all the details, the jury knew from Eads' testimony that this was not Davis' first trouble with the law in a drug related offense. The evidence clearly allowed the jury to see the petitioner as an active drug dealer and not new at the business. He was, instead, an individual fully aware of the nature of his illegal activity, who, aware of the purpose for which the drugs were being procured, was in the business of selling drugs for profit. Accordingly, the jury awarded the petitioner a sentence which it believed was appropriate for such an offender. The trial court, with a more detailed comprehension of Davis' record of prior drug offenses, chose to enter judgment on that verdict, and directed the sentences to be served consecutively. A reasoned decision on whether the sentences were cruel and unusual must do more than to take these facts into account; it must accept the facts as an

indication of the nature of the crime committed.[3]

## II

### A.

In the petition for a writ of habeas corpus and in argument, Davis has contended that the sentences imposed upon him are so excessive as to be disproportionate to the crime he committed. Although we recognize that the Eighth Amendment "proscribes punishment grossly disproportionate to the severity of the crime," see *Ingraham v. Wright*, 430 U.S. 651, 667, 97 S.Ct. 1401, 1410, 51 L.Ed.2d 711 (1977), Davis' argument would require us to find cruel and unusual a sentence for a term of years and a fine, both of which are within the limits set by statute. Under Virginia law, the distribution of controlled substance, such as marijuana, and the possession of the same for distribution were punishable by a term of imprisonment not less than five nor more than forty years and by a fine of no more than $25,000. *Va.Code Ann.*, 1974 Repl. Vol., § 54–524.101:1; see *Va.Code Ann.* § 18.2–248.[4] Davis was sentenced to twenty years imprisonment and a $10,000 fine for each count, punishment well within the limits imposed by the statute. Hence, we are faced with the question of what is the proper inquiry into the severity of a jury-awarded and court imposed sentence, when the challenged punishment is a term of years and fine which fall within the limits imposed by statute.

### B.

We begin our inquiry with the observation that the Supreme Court has never found a sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment under the Eighth Amendment. *Downey v. Perini*, 518 F.2d 1288, 1290 (6th Cir. 1975), vacated for reconsideration in the light of an Ohio statute 423 U.S. 993, 96 S.Ct. 419, 46 L.Ed.2d 367 (1975).[5]

The Supreme Court decision upon which Davis places primary reliance clearly is not such a case. *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910) involved more a question of the method of punishment than the length of the prison term. The defendant, an official of the Phillipine government, was convicted of falsifying public records and sentenced to fifteen years imprisonment, *cardena temporal*.

The presence of the sanction *cardena temporal* prevents the *Weems* opinion from stating a holding on a challenge to the mere length of a prison sentence; it indicates that the decision deals with the conditions accompanying the service of the sentence and the disabilities which followed the convict even after release from confinement.

*Cardena temporal* was an hispanic sanction, carried over into Fillipino law from the jurisdiction's Spanish antecedents. The punishment involved a sentence of from twelve to twenty years imprisonment, at "hard and painful labor" with "a chain at the ankle, hanging from the wrists." *Id.*, at

---

**3.** Davis does not contend that the sentences authorized by the Virginia statute are on their face cruel and unusual. Rather, he points to the excessiveness, in his particular case, of the sentence awarded by the jury and imposed by the court, relying on *Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973), cert. den., 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974). Hence, we should examine the nature of the factual case against Davis, and, as in any other criminal case, draw all inferences in favor of the Commonwealth, for we inquire, in a habeas corpus proceeding, only as to whether there was any evidence at all to support the judgment of the State court. *Williams v. Peyton*, 414 F.2d 776 (4th Cir. 1969).

**4.** If the distribution, or the possession for distribution, of the marijuana had not been for profit, or to induce the use thereof or addiction thereto, but merely as an accommodation to another individual, Davis would only have been guilty of a Class 1 misdemeanor. § 54–524.-101:1. A Class 1 misdemeanor is punishable by confinement in jail not to exceed twelve months, or a one thousand dollar fine, or both. *Va.Code Ann.* § 18.2–11.

**5.** In *Howard v. Fleming*, 191 U.S. 126, 24 S.Ct. 49, 48 L.Ed. 121 (1903), the Court, considering only the length of the sentence, held that a ten year sentence for swindling by means of a pretended gold brick was not cruel and unusual.

p. 364, 30 S.Ct. at p. 548. Moreover, the imposition of *cardena temporal* stripped the convict of "the right of parental authority, guardianship of person or propety, participation in the family council, marital authority, the administration of property, and the right to dispose of his own property by acts *inter vivos* . . ." (civil interdiction); it placed him under surveillance by the state for the remainder of his life, including getting permission even to change residence, and it stripped him of the right to hold public office, to vote, or to receive honors or retirement pay. *Id.*, 364–365, 30 S.Ct. 544.

Thus, the sentence imposed upon Weems constituted more than a prison sentence and a fine. Rather, as the Court observed, after the "prison bar and chains [were] removed," Weems would go, not to freedom, but to "a perpetual limitation of his liberty." *Id.*, at p. 366, 30 S.Ct. at p. 549. The deprivations incidental to the imposition of *cardena temporal* colored the sanction and required the invalidation of the sentence imposed on Weems. The loss of political rights, the subjection of the convict to perpetual state surveillance, and the terrible incidents of the prison term, including the painful labor in chains and shackles, shocked the Court into the decision it made. Clearly, the incidents of *cardena temporal*, and not the mere length of a fifteen year prison term for an unfaithful public servant, prompted the Court to the decision it reached.

This conclusion is buttressed by the later portion of the Court's opinion in *Weems* wherein the Court confronts a plea by the United States to sever the prison term from the incidents of *cardena temporal*, leaving the former in force while voiding the latter. The Court's response was plain and to the point: the incarceration was inseparable, under Phillipine law, from the incidents of *cardena temporal, Id.*, at p. 382, 30 S.Ct. 544; the imposition of *cardena temporal* was required by that law, *Id.*, at p. 381, 30 S.Ct. 544; and *cardena temporal* was in violation of the Eighth Amendment, *Id.*, at p. 382, 30 S.Ct. 544. Therefore, the decision rests, not on the length of the prison sentence, but on the incidents of its service and consequential and life-long restrictions on liberty which followed the prisoner's release from prison.

Davis has also placed reliance on *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) in arguing that the Supreme Court has spoken on the issue of whether a sentence, by its length alone, may be cruel and unusual. That reliance is misplaced. *Robinson* involved the application of the Eighth Amendment to "impose substantive limits on what can be made criminal and punished as such." *Ingraham v. Wright*, 430 U.S. 651, 667, 97 S.Ct. 1401, 1410, 51 L.Ed.2d 711 (1977). The Court merely held that the Constitution forbade the incarceration of a narcotics addict as a criminal. Thus, the decision related to the criminality of the status of an offender, forbidding the use of criminal sanctions against such individuals, regardless of the severity or leniency of the sentence. "Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold." *Robinson, supra*, 370 U.S. at p. 667, 82 S.Ct. at p. 1421.

### C.

Even though the Court has never held an otherwise lawful sentence for a term of years to be cruel and unusual, Davis correctly indicates that there is discussion in some of the cases which sets out a doctrine under which a sentence may be set aside as cruel and unusual if it is "grossly disproportionate to the severity of the crime." See *Ingraham v. Wright*, 430 U.S. 651, 667, 97 S.Ct. 1401, 1410, 51 L.Ed.2d 711 (1977).

Davis has not attacked the validity of the statute imposing the sentence for his crime; he has instead claimed that, in his particular case, the sentences imposed upon him were cruel and unusual even though they were within statutory limits. While some circuits rule that an attack on a sentence within statutory limits will be considered an attack on the sentencing statute, see e. g., *Pependrea v. United States*, 275 F.2d 325 (9th Cir. 1960), cf. *Weems*, 217 U.S. p. 382, 30 S.Ct. 544, this circuit apparently allows a convict to present a claim in the manner by

which Davis has proceeded, i. e. whether the "sentence *in this case* is so excessive and disproportionate to the underlying offenses as to constitute cruel and unusual punishment." (italics in original) *Hart v. Coiner*, 483 F.2d 136, 139 (4th Cir. 1973), cert. den. 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974).

Davis' contentions as well as the district court's opinion are based upon an implementation of the analysis followed in *Hart v. Coiner*. However, the circumstances here, especially the imposition of sentences consisting of terms of years within the periods authorized by statute, make reliance on the *Hart* analysis misplaced.

■ The district court borrowed from *Hart* the guidelines which were used in that decision to determine the constitutionality of the sentence imposed. The guidelines included the nature of the offense committed, the legislative purpose behind the punishment, the punishment imposed in other jurisdictions for the same offense, and the punishment imposed in the same jurisdiction for other offenses. While these factors may be proper to consider in certain cases under the Eighth Amendment, we do not believe that *Hart* meant them to be mandatory or all inclusive in each such case. Cases contemporaneous with, before, and after *Hart* make that apparent.

To begin with, we should note that, like the Supreme Court, we have never set aside a sentence for a term of years, as in violation of the Eighth Amendment, because of excessive length. In *Ralph v. Warden*, 438 F.2d 786 (4th Cir. 1970) we set aside a death sentence for rape in which the victim's life was neither taken nor endangered because the sentence was "so disproportionate," p. 793; in *Hart v. Coiner* we disapproved imprisonment for life for recidivism for conviction of three felonies[6] because the sentence was "so excessive and disproportionate to the underlying offenses," p. 139; and in *Roberts v. Collins*, 544 F.2d 168 (4th Cir.

1976) we set aside five years of a twenty year sentence for assault, because assault (with no maximum sentence) was a lesser included offense of assault with intent to murder. Following a guilty plea to assault as a lesser included offense of one crime charged,[7] we held ". . . the Constitution does not sanction the imposition of a greater punishment for a lesser included offense than lawfully may be imposed for the greater offense," p. 170. Other than these three cases, no case is called to our attention in which we have awarded relief to a prisoner under the Eighth Amendment for relief from a sentence within the bounds of a statute. None of them nullify a sentence of a term of years because of length, and none modify or limit the cases we analyze below which were decided under the Eighth Amendment.

In *United States v. Martell*, 335 F.2d 764 (4th Cir. 1964) we held, in denying relief from a forty year sentence for kidnapping, that "[w]here the sentence is within the limit set by the statute, we are barred, except in the most exceptional circumstances, from any inquiry we might otherwise be inclined to make," p. 766. In *Stevens v. Warden*, etc., 382 F.2d 429 (4th Cir. 1967), although we termed a twenty year sentence for armed robbery "shocking" because of the circumstances of the case, we held ". . . the federal courts have no right to review any sentence of a state court which does not exceed the statutory maximum sentence which may be imposed under the laws of the state," p. 433. In *Robinson v. Warden*, etc., 455 F.2d 1172 (4th Cir. 1972) we held that a fifteen year sentence for assault with intent to commit murder was not cruel and unusual because "[t]he 15-year sentence was within the range of punishment allowed by Maryland law, and the sentence was not disproportionate to the crime," p. 1177.

*Hart*, previously mentioned, was followed in 1973 by its companion case, *Wood v.*

---

6. Passing a $50.00 check with insufficient funds, transporting forged checks in the amount of $140.00 across the state lines, and perjury. See *Hart*, p. 138.

7. Roberts was charged both with assault and assault with intent to murder. The maximum sentence for assault with intent to murder was 15 years.

*South Carolina,* 483 F.2d 149 (4th Cir. 1973). *Wood* denied relief from concurrent five year sentences for making obscene telephone calls. While we described the statutory maximum of ten years as "startling," having been increased from six months, we held the sentences were not "so excessive and disproportionate as to constitute cruel and unusual punishment," p. 150. We noted that there were no objective factors establishing disproportionality, and referred to *Hart,* but did not follow the analysis of that case.

After *Hart* and *Wood,* in other Eighth Amendment cases we have followed the pattern of *Martell, Stevens,* and *Robinson.*

In *United States v. Wooten,* 503 F.2d 65 (4th Cir. 1974), citing *Martell,* but not *Ralph* or *Hart,* we affirmed a two year maximum sentence for a gun law conviction because "[i]t has been decided by this court that interference with a sentence which is within the limitation provided by statute is not, in the absence of extraordinary and special circumstances, within the appellate court's province," p. 67. In *United States v. Atkinson,* 513 F.2d 38 (4th Cir. 1975) we affirmed sentences of twelve and four years for young adult offenders without the *Hart* analysis.

Yet other cases have distinguished *Hart.* In *Griffin v. Warden, etc.,* 517 F.2d 756 (4th Cir. 1975) we denied relief following conviction under the same West Virginia recidivist statute at issue in *Hart.* Our only distinction was that the convictions of felony by Griffin (burglary, breaking and entering, and grand larceny) "are not at all like those of Hart," p. 757, but "involve the potentiality of violence and danger to life as well as property," p. 757. We then said: "Whether or not Griffin may be actually deserving of such extreme punishment is not within our province to decide; we hold only that the imposition of a life sentence predicated upon these particular three offenses does not offend the eighth amendment," p. 757. The court did not engage in any further distinction of *Hart* except its

comparison of the offenses upon which the convictions were based. In *Hall v. McKenzie,* 537 F.2d 1232 (4th Cir. 1976) we denied habeas corpus relief on account of a 10–20 year sentence for non-forcible rape of a minor. We held that *Hart* had no application because of a "number of factors,"[8] p. 1235. The first factor listed was the severity of the sentence, referring to the difference between life and 10–20 years. The case also pointed out that its measuring up to one of the *Hart* guidelines was questionable (the sentence allowable in other states), and that this crime was against the person. We held *Hart* not determinative and said "[a] more apt precedent is *Wood,*" p. 1236, which was decided without the *Hart* analysis as we have noted.

In view of circuit precedent, we are of opinion that the scope of inquiry into the constitutionality of a legal sentence *for* a term of years need not be as broad as the inquiry used in *Hart* when a life sentence was imposed. In an attack for excessiveness on a sentence for a number of years, any authorized inquiry of the court should extend only to the consideration of the seriousness of the offense committed and the application of the sanction imposed for that offense. We can give no relief unless the sentence imposed is "grossly disproportionate to the severity of the crime." *Ingraham v. Wright,* 430 U.S. 651, 667, 97 S.Ct. 1401, 1410, 51 L.Ed.2d 711 (1977). And in those cases where the challenged sentence is fixed by a jury within the limits imposed by statute, we afford special deference to the legislative and jury determination of the seriousness of the offense, and whether the punishment is cruel and unusual. See *Gregg v. Georgia,* 428 U.S. 153, 174–184, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Thus, the sentence will not be considered grossly disproportionate to the severity of the offense unless there are "extraordinary and special circumstances" which make an otherwise valid sentence cruel and unusual. *United States v. Wooten,* 503 F.2d 65, 67 (4th Cir. 1974).

8. *Ralph* was held to have no application because it involved the death penalty "which occupies a special place in eighth amendment jurisprudence."

This rule antedates the *Hart* opinion and, as we have shown is unaffected by *Hart.* Nor is the rule peculiar to this circuit, it seems to be generally accepted by various courts of appeals. See *United States v. Dawson,* 400 F.2d 194 (2d Cir. 1968), cert. den. 393 U.S. 1023, 89 S.Ct. 632, 21 L.Ed.2d 567 (1969); *Page v. United States,* 462 F.2d 932 (3d Cir. 1972); *Yeager v. Estelle,* 489 F.2d 276 (5th Cir. 1973), cert. den. 416 U.S. 908, 94 S.Ct. 1616, 40 L.Ed.2d 113 (1974); *United States ex rel. Sluder v. Brantley,* 454 F.2d 1266 (7th Cir. 1972); *United States v. Wilson,* 506 F.2d 521 (9th Cir. 1974); *United States v. MacClain,* 501 F.2d 1006 (10th Cir. 1974). Contra: *Downey v. Perini, supra.* In fact, as we have noted, some circuits are more strict than are we, refusing to allow the convict to argue that the sentence imposed was cruel and unusual in his particular case, considering such a claim an attack on the sentencing statute itself. See also *Dawson,* p. 200.

Therefore, assuming we have any power to review the sentence, cf. *Stevens,* p. 433, we arrive at the same conclusion reached by the Fifth Circuit that a sentence for a term which is within the limits set out by statute will not be considered cruel and unusual unless it is so disproportionate as to "shock [. . .] human sensibilities." *Yeager v. Estelle,* 489 F.2d 276 (5th Cir. 1973), cert. den. 416 U.S. 908, 94 S.Ct. 1616, 40 L.Ed.2d 113 (1974). And, even in such cases, judicial inquiry also may only inquire whether there are extraordinary and special circumstances which taint what would otherwise be a perfectly legal sentence.

Examining this case for extraordinary and special circumstances which would indicate that the sentences given Davis were constitutionally disproportionate to the offenses he committed, we find no indication of such disparity as to shock human sensibilities, if any disparity at all. The evidence shows the defendant to be a drug dealer by vocation who was willing to sell illegal narcotics to inmates of a penal institution, and probably as well to the wife of an inmate left alone with an infant child. The jury therefore had the right to consider

the offense a very serious crime. By not attacking the sentencing statute on its face, Davis has accepted the legislature's classification of the sale of marijuana as a serious offense; he must prove that, in his particular case, the offense was not serious or was mitigated in some way which necessarily precluded the imposition of the sentence awarded. But recordings of the transaction between Eads and Davis were played to the jury, as well as other damning evidence admitted. The jury was familiar with the nature of the transaction as well as the defendant's drug selling business. We cannot say that the jury could not have been impressed by what it heard, and it had a right to consider all the evidence in fixing the sentences.

Finally, the trial judge, who could have sentenced concurrently, sentenced consecutively. Not only had he heard the witnesses testify, which we have not; he knew, for example, which the jury did not, that Davis previously had been convicted of selling LSD and that the two offenses for which Davis had just been found guilty were committed while on bail pending appeal from the previous conviction for selling LSD.

Thus, we are unable to say that there is no evidence at all, *Williams v. Peyton,* 414 F.2d 776 (4th Cir. 1969), to support the conclusion by the jury and trial court that Davis committed serious crimes which might deserve the punishment awarded. Finding no extraordinary and special circumstances, and being of opinion that the sentences do not shock human sensibilities, we conclude that the sentences imposed on Davis were neither cruel nor unusual.

Accordingly, the judgment of the district court is

*REVERSED.*