HUTTO, DIRECTOR, VIRGINIA STATE DEPARTMENT OF CORRECTIONS, ET AL. *v.* DAVIS

No. 81–23.   Decided January 11, 1982

PER CURIAM.

On October 26, 1973, law enforcement officers raided respondent's home and seized approximately nine ounces of marihuana and assorted drug paraphernalia.   Several days before the raid, officers had tape-recorded a transaction in which respondent had sold marihuana and other controlled substances to a police informant.   With the aid of the seized

evidence and the tape recording, respondent was convicted in Virginia state court of possession with intent to distribute and distribution of marihuana. The jury imposed a fine of $10,000 and a prison term of 20 years on each of the two counts, the prison terms to run consecutively. At the time of respondent's conviction, Virginia law authorized fines of up to $25,000 and prison terms of not less than 5 nor more than 40 years for each of respondent's offenses. *Davis* v. *Davis*, 585 F. 2d 1226, 1229 (CA4 1978).

After exhausting direct appeal, respondent brought a habeas action in the United States District Court for the Western District of Virginia, asserting that a 40-year sentence was so grossly disproportionate to the crime of possessing less than nine ounces of marihuana that it constituted cruel and unusual punishment as proscribed by the Eighth and Fourteenth Amendments. The District Court, relying primarily upon the four factors set forth in *Hart* v. *Coiner*, 483 F. 2d 136 (CA4 1973), cert. denied, 415 U. S. 938 (1974), agreed:

> "After examining the nature of the offense, the legislative purpose behind the punishment, the punishment in the Commonwealth of Virginia for other offenses, and the punishment actually imposed for the same or similar offenses in Virginia, this court must necessarily conclude that a sentence of forty years and twenty thousand dollars in fines is so grossly out of proportion to the severity of the crimes as to constitute cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution." *Davis* v. *Zahradnick*, 432 F. Supp. 444, 453 (1977).

Accordingly, the District Court issued a writ of habeas corpus.

A panel of the United States Court of Appeals for the Fourth Circuit reversed. *Davis* v. *Davis*, *supra*. The

panel correctly noted that this Court "has never found a sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment," 585 F. 2d, at 1229, and held that respondent had failed to show that his sentence, in light of the factors known to the jury[1] and the punishment authorized by Virginia, was sufficiently extraordinary to violate the Eighth and Fourteenth Amendments. *Id.*, at 1233. The decision was short-lived. Sitting en banc, the Court of Appeals reheard the case and, "for reasons sufficiently stated by the district judge in his opinion," affirmed the award of habeas relief. *Davis* v. *Davis*, 601 F. 2d 153, 154 (1979). We granted certiorari, vacated the judgment of the Court of Appeals, and remanded the case for reconsideration in light of our decision in *Rummel* v. *Estelle*, 445 U. S. 263 (1980). *Sub nom. Hutto* v. *Davis*, 445 U. S. 947 (1980). The Court of Appeals again affirmed the District Court, this time by an equally divided vote. *Davis* v. *Davis*, 646 F. 2d 123 (1981). Because the Court of Appeals failed to heed our decision in *Rummel*, we now reverse.

The petitioner in *Rummel* was sentenced to life imprisonment under the Texas recidivist statute upon being convicted of his third felony: obtaining $120.75 by false pretenses. He had previously been convicted of passing a forged check in the amount of $28.36, and of fraudulently using a credit card to obtain $80 worth of goods or services. 445 U. S., at 265–266. Like the respondent in this case, Rummel argued that the length of his imprisonment was so "grossly disproportionate" to the crime for which he was sentenced that it violated the ban on cruel and unusual punishment of the

---

[1] In addition to the evidence seized during the raid and the tape recording of the drug transaction, all of which demonstrated that respondent was an active drug dealer, the jury knew from evidence presented at trial that respondent had knowingly sold drugs to be smuggled into prison, had sold drugs to an inmate's wife who was alone with an infant child, and had himself been imprisoned in the past. *Davis* v. *Davis*, 585 F. 2d, at 1227–1228.

Eighth and Fourteenth Amendments. In rejecting that argument, we distinguished between punishments—such as the death penalty—which by their very nature differ from all other forms of conventionally accepted punishment, and punishments which differ from others only in duration. This distinction was based upon two factors. First, this "Court's Eighth Amendment judgments should neither be nor appear to be merely the subjective views of individual Justices." *Id.*, at 275. And second, the excessiveness of one prison term as compared to another is invariably a subjective determination, there being no clear way to make "any constitutional distinction between one term of years and a shorter or longer term of years." *Ibid.* Thus, we concluded that "one could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, . . . the length of the sentence actually imposed is purely a matter of legislative prerogative." *Id.*, at 274. Accordingly, we held that Rummel's life sentence did not violate the constitutional ban on cruel and unusual punishment.

As mentioned above, the District Court found respondent's sentence to be unconstitutional by applying the four-part test of *Hart* v. *Coiner, supra. Hart* also was relied upon by the lower-court dissenters in *Rummel*, and was implicitly disapproved by our rejection of the dissenters' view. Not only did we expressly recognize *Hart* as the primary opposing authority, 445 U. S., at 267, 269, but our opinion also disapproved each of its four "objective" factors.[2] Because the District Court's grant of habeas relief was clearly guided by these factors, the Court of Appeals erred in affirming.

---

[2] Applying the first *Hart* factor to this case, the District Court found "no element of violence and minimal, debatable danger to the person." *Davis* v. *Zahradnick*, 432 F. Supp. 444, 452 (WD Va. 1977). In *Rummel*, however, we noted that "the presence or absence of violence does not always

In short, *Rummel* stands for the proposition that federal courts should be "reluctan[t] to review legislatively mandated terms of imprisonment," *id.* at 274, and that "successful challenges to the proportionality of particular sentences" should be "exceedingly rare," *id.* at 272.[3] By affirming the District Court decision after our decision in *Rummel*, the Court of Appeals sanctioned an intrusion into the basic line-drawing process that is "properly within the province of legislatures, not courts." *Id.*, at 275–276. More importantly, however, the Court of Appeals could be viewed as having ig-

affect the strength of society's interest in deterring a particular crime or in punishing a particular criminal." 445 U. S., at 275. *Hart*'s second factor calls for an examination of the purposes behind the criminal statute and the existence of less restrictive means of effectuating those purposes. On this factor the District Court was inconclusive, but noted that the amount of marihuana involved was less than nine ounces, implying that such minimal possession could adequately be deterred with shorter prison sentences. 432 F. Supp., at 452. Such analysis was implicitly rejected by our conclusion in *Rummel* that the " 'small' amount of money taken" was inapposite, because to acknowledge that the State could have given Rummel a life sentence for stealing *some* amount of money "is virtually to concede that the lines to be drawn are indeed 'subjective,' and therefore properly within the province of legislatures, not courts." 445 U. S., at 275–276. Applying the third *Hart* factor, the District Court found that respondent's sentence for possession with intent to distribute exceeded the maximum penalty available for that offense in all but four States, and that his sentence for distribution exceeded the maximum penalty available for that offense in all but eight States. 432 F. Supp., at 452–453. We rejected such comparison in *Rummel*, stating that "[a]bsent a constitutionally imposed uniformity inimical to traditional notions of federalism, some State will always bear the distinction of treating particular offenders more severely than any other State." 445 U. S., at 282. Finally, the fourth *Hart* factor led the District Court to conclude that respondent's sentence was disproportionate when compared to punishments applicable to other offenses under Virginia law. 432 F. Supp., at 453. This comparison was rejected in *Rummel* because "[o]ther crimes . . . implicate other societal interests, making any such comparison inherently speculative." 445 U. S., at 282, n. 27.

[3] We noted in *Rummel* that there could be situations in which the proportionality principle would come into play, such as "if a legislature made overtime parking a felony punishable by life imprisonment." *Id.*, at 274, n. 11.

nored, consciously or unconsciously, the hierarchy of the federal court system created by the Constitution and Congress. Admittedly, the Members of this Court decide cases "by virtue of their commissions, not their competence." And arguments may be made one way or the other whether the present case is distinguishable, except as to its facts, from *Rummel.* But unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be.

Accordingly, the petition for a writ of certiorari is granted, the judgment of the Court of Appeals is reversed, and the case is remanded to the District Court with instructions to dismiss respondent's habeas petition.

*It is so ordered.*

JUSTICE POWELL, concurring in the judgment.

The Court holds that the Eighth Amendment countenances a prison term of 40 years and a fine of $20,000 for respondent's possession and distribution of approximately nine ounces of marihuana said to have a street value of about $200. I view the sentence as unjust and disproportionate to the offense. Nevertheless, for the reasons stated below I reluctantly conclude that the Court's decision in *Rummel* v. *Estelle,* 445 U. S. 263 (1980), is controlling on the facts before us. Accordingly, I join the judgment only.

I

The respondent Davis met Eads in prison. During Eads' confinement, his wife had become a drug user. Concerned about this development and its effect on their 2-year-old child, Eads offered to cooperate with the police "to assist in the exposure and arrest of those supplying drugs to his wife and any illicit drug distributor in the area, including Davis who Eads identified as an active drug dealer in Wythe County." *Davis* v. *Davis,* 585 F. 2d 1226, 1228 (CA4 1978).

On furlough from prison, Eads told Davis he wished to buy drugs for himself and some mutual friends currently in prison. Shortly thereafter, the two went to Davis' home where Davis sold Eads three ounces of marihuana for $74. Davis also gave Eads "drug pills which included L. S. D and another illicit controlled drug." *Ibid.* A police raid on Davis' home later uncovered about six ounces of marihuana, two scales, and other drug paraphernalia.

Davis was found guilty of both distributing marihuana and of possessing marihuana with intent to distribute. On each count, he received a sentence of 20 years' imprisonment and a $10,000 fine. These sentences were imposed on a consecutive basis. The District Court granted his petition for a writ of habeas corpus because the sentences were "so grossly out of proportion to the severity of the crimes as to constitute cruel and unusual punishment . . . ."[1] This judgment was reversed on appeal, *Davis* v. *Davis, supra,* but reinstated by the Court of Appeals on rehearing en banc.[2] We remanded for reconsideration in light of our decision in *Rummel* v. *Estelle, supra.*[3] By an equally divided vote en banc, the Court of Appeals again affirmed.[4]

## II

The sole authority upon which the Court today relies is its decision in *Rummel* v. *Estelle.* *Rummel* decided that the Eighth Amendment's proscription of cruel and unusual punishments[5] was not transgressed by the imposition of life imprisonment for a recidivist's third felony, each a nonviolent fraud involving less than $125. The Court also observed, however:

---

[1] *Davis* v. *Zahradnick,* 432 F. Supp. 444, 453 (WD Va. 1977).

[2] *Davis* v. *Davis,* 601 F. 2d 153 (CA4 1979).

[3] *Hutto* v. *Davis,* 445 U. S. 947 (1980).

[4] *Davis* v. *Davis,* 646 F. 2d 123 (CA4 1981).

[5] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

> "This is not to say that a proportionality principle [*viz.*, that grossly disproportionate punishments are unconstitutional] would not come into play in the extreme example mentioned by the dissent, *post*, at 288, if a legislature made overtime parking a felony punishable by life imprisonment."   445 U. S., at 274, n. 11.

The *Rummel* Court therefore did not reject the proportionality principle long settled by our cases.[6]   It did take such a restricted view of the principle that—in the future—appellate courts, duty bound to follow the decision of this Court, often will be compelled to accept sentences that arguably are cruel and unusual.

I recognize, of course, that under our system the limits of a prison sentence normally are a matter of legislative prerogative, and trial courts have the primary responsibility to determine an appropriate sentence—within these limits—in light of the facts and circumstances of the particular case. Review of sentencing is not generally a function of appellate review.   Yet, our system of justice always has recognized that appellate courts *do* have a responsibility—expressed in the proportionality principle—not to shut their eyes to grossly disproportionate sentences that are manifestly unjust.   I therefore have no criticism of the District Court or the Court of Appeals for exercising this responsibility and reaching the judgments that are reversed here today.

There are features of this case that arguably distinguish it from *Rummel*.   I identify these briefly.   The first is a letter from the Commonwealth Attorney who successfully prosecuted Davis.   The letter is set forth in full below.[7]   It was

---

[6] *E. g.*, *Coker* v. *Georgia*, 433 U. S. 584 (1977); *Weems* v. *United States*, 217 U. S. 349 (1910).

[7] The letter from the Commonwealth Attorney to Davis' attorney reads as follows:

"This will confirm our recent telephone conversation wherein I advised I would pose no objection to the release of Mr. Davis from the Virginia penal system on a suspended term basis.

solicited by Davis' lawyer, some three years after Davis had commenced to serve his 40-year term. One can say, of course, that such a letter often can be obtained from a prosecutor who may have second thoughts as to the justness of a sentence he had sought at trial. I normally would give little weight to such a letter. But the prosecutor here, in a thoughtful letter, did advance a nonfrivolous reason for his conclusion that Davis' sentence was a "gross injustice." He referred to the "grave disparity in sentencing" in comparable drug offenses in the "Commonwealth [of Virginia] and the nation." [8]

---

"Heretofore, I have steadfastly opposed his release. However, the sentences now being imposed throughout the majority of the Commonwealth and the nation for *comparable* acts of drug distribution are extremely light and in most cases insignificant. In view of such, I think a *gross injustice* would be done should I not recommend his immediate release with the remainder of his term suspended.

"I do wish to make it expressly clear that my recommendation should not be construed as being critical of the jury that convicted Mr. Davis. I actually asked for a heavier sentence than was imposed. The citizens of this county have not softened their views toward drug offenders, and neither have I, but by the same token I cannot condone *such grave disparity in sentencing*.

"I think our community, our jury, and our Court were correct in their approach to the drug problem. However, that we may be correct and others wrong in their assessment, does not enable me to continue to ignore the wrong that would be perpetuated upon Mr. Davis by his continued confinement. My [conscience] dictates that in view of the lack of any semblance of uniformity of sentencing throughout the nation in dealing with the drug problem, that Mr. Davis's continued incarceration is *grossly unjust*.

"I trust that this is a fair summary of the content of our conversation, and if it is not, I hope you will please advise me." Letter of Feb. 28, 1977 (emphasis added).

In the District Court, the parties stipulated that, had this prosecutor testified "with respect to the severity of the sentences imposed upon Petitioner for marijuana-related offenses, his testimony would comport with the contents of the attached letter . . . ." Supplemental Stipulation of Fact, Mar. 18, 1977.

[8] Davis also prepared a study of drug-related sentencing in Virginia over a 9½-month period in 1975–1976. This study summarized sentencing of 117

The second and more important factor that arguably distinguishes *Rummel* is the action of the Virginia State Legislature in 1979. It then reduced the maximum penalty for offenses of which Davis was convicted to 10 years on each count—regardless of aggravating circumstances. See Va. Code § 18.2–248.1(a)(2) (Supp. 1981) and § 18.2–10(e) (1975). This *maximum* is less than half the sentence Davis received. Because it sets a maximum, the legislative action takes all relevant aggravating circumstances into account. This reduction—five years after Davis' conviction and two years after his prosecutor's letter—evidences Virginia's present sentencing judgment that marihuana possession and distribution in small amounts no longer would justify Davis' sentence.[9] Although this change in law was not made retroactive, it is evidence from the most authoritative state source that Davis' sentence was unjust and no longer would be valid.

III

Based on this evidence of comparative sentencing and the relatively minor degree of Davis' criminality, affirmance of the judgment of the Court of Appeals arguably could be justified. I conclude, however, that *Rummel* requires reversal. Davis was convicted of distributing marihuana, and had dealt in other drugs as well. He was willing to sell marihuana for

inmates convicted of possessing, selling, or manufacturing marihuana. The average of these sentences was three years, two months. The maximum—for any quantity—was 15 years. I give this study only slight weight because of its short time period and its failure to give information about relevant aggravating circumstances.

[9]*Rummel* also involved a legislative revision of the relevant crimes. The basis for Rummel's life sentence was his conviction as a habitual offender. After conviction for two prior felonies, this habitual offender law provided for automatic imposition of a life sentence upon a third felony conviction. 445 U. S., at 278. Rummel's third felony was theft by false pretext. After his conviction on that count and as a habitual offender, Texas reclassified his third offense as a misdemeanor. *Id.*, at 295. Unlike Virginia's 1979 amendment with respect to Davis, however, Texas' statutory reduction did not convey any basic change in its attitude toward the statutory basis for Rummel's lengthy sentence: recidivism.

use by prison inmates and "probably as well to the wife of an inmate left alone with an infant child." 585 F. 2d, at 1233. He previously had been sentenced on a drug-related offense.[10] By comparison, Rummel's offenses—three minor frauds involving almost trifling sums of money—were far less serious. Rummel's sentence, moreover, was *more* severe than Davis'. And Davis has been unable to show—by means of statutory comparisons—that his sentences suffer from a greater degree of disproportionality than Rummel's did. Compare *Davis* v. *Zahradnick*, 432 F. Supp. 444, 452–453 (WD Va. 1977), with 445 U. S., at 296–302.

These cases illustrate the seriousness of the disparity in sentencing that may distinguish our system of justice from other mature systems. Sentencing disparity in our country primarily results not from varying statutory limits among the States. Rather, in a nation of our size and with the sentencing decision in particular cases vested—as it should be—in trial courts, a good deal of disparity is inevitable. Effort to minimize this, at least on a state-by-state basis, certainly should be continued. Nor should reform in this respect be addressed only to prevent excessive penalties. The criticism of courts occurs more frequently, often fully justified, when persons guilty of crimes of violence, or serious drug distribution offenses, are given sentences that are disproportionately light in view of their offenses, as well as disparate in compari-

---

[10] "While not given all the details, the jury knew from Eads' testimony that this was not Davis' first trouble with the law in a drug related offense." *Davis* v. *Davis*, 585 F. 2d 1226, 1228 (CA4 1978). "[T]he trial judge, who could have sentenced concurrently, sentenced consecutively. Not only had he heard the witnesses testify, which we have not; he knew, for example, which the jury did not, that Davis previously had been convicted of selling LSD, and that the two offenses for which Davis had just been found guilty were committed while on bail pending appeal from the previous conviction for selling LSD." *Id.*, at 1233. Cf. *Vines* v. *Muncy*, 553 F. 2d 342, 349 (CA4 1977) (jury sentence not final under Virginia practice, since its findings are subject to suspension by the trial judge).

son with other sentences. Sentencing that is just should take into account the paramount interest of society in being protected from criminal conduct as well as the right of convicted persons to be dealt with fairly according to law.

I join the judgment of the Court.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL and JUSTICE STEVENS join, dissenting.

The increasingly alarming penchant of the Court inappropriately to invoke its power of summary disposition could not be more evident than in this case. With the benefit of neither full briefing nor oral argument, the Court holds that *Rummel* v. *Estelle*, 445 U. S. 263 (1980), precluded the courts below from holding that respondent has been subjected to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.

*Rummel* considered whether the application of the Texas habitual offender statute to petitioner William Rummel constituted cruel and unusual punishment in violation of the Eighth Amendment. The Texas statute prescribed a mandatory life sentence following a third conviction on a felony charge. Rummel became subject to this provision in 1973, when he was convicted of obtaining $120.75 by false pretenses, then a felony under Texas law. On two earlier occasions, Rummel had been convicted of felonies under Texas law: in 1964 for fraudulently using a credit card to obtain $80 worth of goods or services, and in 1969 for passing a forged check in the amount of $28.36. Rummel argued that the imposition of a mandatory life sentence in his case amounted to cruel and unusual punishment in violation of the Eighth Amendment, as applied to the States through the Fourteenth Amendment, see *Robinson* v. *California*, 370 U. S. 660, 667 (1962). The Court rejected Rummel's constitutional attack. While noting that "one could argue . . . that for crimes concededly classified and classifiable as felonies, . . . the length

of the sentence actually imposed is purely a matter of legislative prerogative," 445 U. S., at 274, the Court adopted a much narrower basis for decision, holding that, in the context of Texas' habitual offender statute, the imposition of a life sentence on Rummel served the legitimate state interests of deterring recidivism and of segregating habitual offenders "from the rest of society for an extended period of time." *Id.*, at 284. Because this narrower ground was chosen, the Court found it unnecessary to decide whether the Eighth Amendment would have been violated if, in the absence of the habitual offender statute, a life sentence had been imposed on Rummel "merely for obtaining $120.75 by false pretenses." *Id.*, at 276. The Court stated in this respect:

> "[T]he interest of the State of Texas here is not simply that of making criminal the unlawful acquisition of another person's property; it is in addition the interest, expressed in all recidivist statutes, in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law. By conceding the validity of recidivist statutes generally, Rummel himself concedes that the State of Texas, or any other State, has a valid interest in so dealing with that class of persons." *Ibid.*

Relying on *Rummel*, the *per curiam* suggests that because the punishment imposed on respondent was within the maximum prescribed by the state legislature, the Court of Appeals, which affirmed the District Court's grant of habeas relief on Eighth Amendment grounds, "sanctioned an intrusion into the basic line-drawing process that is 'properly within the province of legislatures, not courts.'" *Ante*, at 374, quoting *Rummel*, *supra*, at 275–276. Even if I viewed *Rummel* as properly decided, and I do not, the *per curiam*, by suggesting that it was improper for the courts below to engage in a disproportionality analysis, represents a serious

and improper expansion of *Rummel*. *Rummel* acknowledged that prior decisions of this Court, see, *e. g.*, *Ingraham* v. *Wright*, 430 U. S. 651, 667 (1977); *Trop* v. *Dulles*, 356 U. S. 86 (1958) (plurality opinion); *Weems* v. *United States*, 217 U. S. 349 (1910), recognized that the Eighth Amendment includes a principle of proportionality that requires the invalidation of a sentence that is "grossly disproportionate to the severity of the crime," *Rummel*, *supra*, at 271–272. *Rummel* did not overrule those cases but cited them approvingly.[1] *Rummel* rests on the understanding that, as a consequence of the overwhelming state interests in deterring habitual offenders, the Eighth Amendment does not preclude a State from imposing what *might otherwise constitute a disproportionate prison sentence* on an individual determined under state law to be a habitual offender. Of course, in the instant case, the Commonwealth of Virginia has expressed no will to punish Davis as a habitual offender, and there has been no determination that he is one.

The *per curiam* nevertheless reverses the judgment below on the basis that "*Rummel* stands for the proposition that federal courts should be 'reluctan[t] to review legislatively mandated terms of imprisonment' . . . and that 'successful challenges to the proportionality of particular sentences' should be 'exceedingly rare.'" *Ante*, at 374, quoting *Rummel*, *supra*, at 274, 272. But this general principle of deference surely cannot justify the complete abdication of our responsibility to enforce the Eighth Amendment. The question presented here is whether the sentence imposed on respondent *in this case* comports with the limitation contained

---

[1] That there should be any doubt as to the continued validity of the proportionality principle is particularly incomprehensible in view of the *Rummel* Court's reliance on the proportionality principle in a footnote, where the Court, responding to the fanciful hypothetical of the dissent, stated that this principle would bar a legislature from making "overtime parking a felony punishable by life imprisonment." 445 U. S., at 274, n. 11.

in the Eighth Amendment. To reverse on the basis of *Rummel*, the Court must *at least* demonstrate why this is not one of those "exceedingly rare" cases in which the Eighth Amendment invalidates a sentence as disproportionate. But the *per curiam* engages in no such analysis.[2] We may be sure, however, that the Court of Appeals, directed to reconsider this case in light of *Rummel*, *did* undertake that analysis—upon full review and with the benefit of a substantial record, oral argument, and briefs.

It is obvious to me, as it apparently was to at least five judges of the Court of Appeals, that this case is one of those "exceedingly rare" cases in which a sentence should be invalidated on Eighth Amendment grounds. First, the indications are that the punishment imposed on respondent for the possession and distribution of less than nine ounces of marihuana—40 years' imprisonment and fines of $20,000—is not simply harsh, but is in cruel and painful excess of the punishments imposed by the Virginia courts on other defendants convicted of similar offenses. As the District Court noted:

> "From October 31, 1975 to August, 1976 one hundred and seventeen (117) inmates were committed to the State Department of Corrections for possessing, selling, or manufacturing marijuana. The average sentence for

---

[2] The *per curiam* notes that the District Court applied the four-factor proportionality test of *Hart* v. *Coiner*, 483 F. 2d 136 (CA4 1973). *Ante*, at 371, 373, and n. 2. It then suggests that the test is inconsistent with the decision in *Rummel* and that reversal is therefore appropriate here. Even if the Court were correct in its suggestion that the *Hart* test is inconsistent with *Rummel*, reversal would not be appropriate, because there is simply no basis for saying that the judgment of the Court of Appeals rests on the *Hart* test. The Court of Appeals, sitting en banc, affirmed the judgment of the District Court by an equally divided court, and therefore did not issue an opinion. Accordingly, the five judges of the Court of Appeals that voted to affirm the judgment of the District Court may have based their view of the unconstitutionality of Davis' punishment on reasoning entirely unrelated to that offered by the District Court—particularly since the District Court's opinion had been issued prior to *Rummel*. In

these offenses was three years and two months, the minimum was sixty days, and the maximum was fifteen years." *Davis* v. *Zahradnick*, 432 F. Supp. 444, 453 (WD Va. 1977).

Second, this case is unique in that the very prosecutor who brought the charges against the respondent was forced to concede in light of his experience that the case represents a "grave disparity in sentencing," and that the continued incarceration of Davis "is grossly unjust." [3] Finally, by its subse-

---

any event, this Court reviews judgments, not opinions, and therefore the Court can reverse the judgment of the Court of Appeals only if it is not sustainable on any basis.

[3] The prosecutor's comments were contained in the following letter that he sent to Davis' attorney:

"This will confirm our recent telephone conversation wherein I advised I would pose no objection to the release of Mr. Davis from the Virginia penal system on a suspended term basis.

"Heretofore, I have steadfastly opposed his release. However, the sentences now being imposed throughout the majority of the Commonwealth and the nation for comparable acts of drug distribution are extremely light and in most cases insignificant. In view of such, I think a gross injustice would be done should I not recommend his immediate release with the remainder of his term suspended.

"I do wish to make it expressly clear that my recommendation should not be construed as being critical of the jury that convicted Mr. Davis. I actually asked for a heavier sentence than was imposed. The citizens of this county have not softened their views toward drug offenders, and neither have I, but by the same token I cannot condone such grave disparity in sentencing.

"I think our community, our jury, and our Court were correct in their approach to the drug problem. However, that we may be correct and others wrong in their assessment, does not enable me to continue to ignore the wrong that would be perpetrated upon Mr. Davis by his continued confinement. My conscious *[sic]* dictates that in view of the lack of any semblance of uniformity of sentencing throughout the nation in dealing with the drug problem, that Mr. Davis's continued incarceration is grossly unjust.

"I trust that this is a fair summary of the content of our conversation, and if it is not, I hope you will please advise me." Letter from Thomas B. Baird, Jr., to Edward L. Hogshire (Feb. 28, 1977).

quent action, the Virginia Legislature has implicitly indicated that it views the punishment imposed on the respondent as too severe: in 1979 it reduced from 40 years to 10 years the maximum sentence that can be imposed with respect to each of the two offenses for which the respondent was convicted. See Va. Code § 18.2–248.1(a)(2) (Supp. 1981); § 18.2–10(e) (1975). Under the current statute, respondent could, at maximum, be sentenced to 20 years' imprisonment—two consecutive 10-year terms. This legislative reappraisal of criminal punishment for marihuana offenses does not necessarily render unconstitutional respondent's substantially longer term. But it plainly confirms the views of the courts below, which I share, that the punishment inflicted on Davis is unconstitutionally disproportionate and unsupported by any considered legislative judgment that the punishment inflicted is appropriate for the offenses committed.[4] See *Coker* v. *Georgia*, 433 U. S. 584, 597 (1977) (plurality opinion) ("[T]he legislative rejection of capital punishment for rape strongly confirms our own judgment, which is that death is indeed a disproportionate penalty for the crime of raping an adult woman"). See also *Trop* v. *Dulles*, 356 U. S., at 101 ("The [Eighth] Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society"). For these three reasons, and in the absence of full briefing or oral argument, I think that the judgment below—that Davis has indeed been subjected to cruel and unusual punishment—is not an unreasonable one.[5]

---

[4] This legislative action also undermines any claim that the state interest in having Davis serve a 40-year prison sentence is sufficiently strong to preclude invalidation of the sentence as disproportionate under the Eighth Amendment. See *supra*, at 381–383.

[5] JUSTICE POWELL, concurring in the judgment, nevertheless concludes that the punishment imposed on Davis is not as disproportionate as that imposed on Rummel and that therefore the instant case is controlled by the facts of *Rummel*. *Ante*, at 379–380. But even if the punishment in the instant case could be determined, in the abstract, to be less severe than

Today's decision is profoundly disturbing not only because the Court has misused precedent in order to place its imprimatur on a punishment that the courts below have determined, with ample justification, to be cruel and unusual, but also because it represents yet another instance of this Court's "growing and inexplicable readiness . . . to 'dispose of' cases summarily." *Harris* v. *Rivera, ante,* at 349 (MARSHALL, J., dissenting). I am, of course, cognizant that, because of an ever-increasing docket, the Court has come under extraordinary pressure to accelerate its disposition process. But I do not believe that summary disposition on the basis of the certiorari papers is a proper response to such pressure[6] where, as here, it is employed to change or extend the law in significant respects. Here, the Court reverses the judgment of the Court of Appeals, which had the benefit of our decisions, a concrete record, and a thoughtful Dis-

---

that imposed on Rummel, the fact remains that Rummel was sentenced as a habitual offender and this Court determined the State's interest in imposing unusually harsh sentences on habitual offenders to be a substantial one. No comparable state interest has been offered to support the punishment inflicted here. Although it may be true that the respondent in the instant case has previously been convicted of a drug offense, he was not sentenced as a habitual offender, but for possession and distribution of less than nine ounces of marihuana. Indeed, while the trial judge, who made consecutive the jury's recommended sentences of 20 years on each count, was *aware* of the respondent's prior conviction, the jury, which awarded the sentences, was *unaware* that the respondent had previously been convicted. See *Davis* v. *Davis,* 585 F. 2d 1226, 1233 (CA4 1978).

[6] Indeed, an increased rate of summary dispositions may prove to be counterproductive. As the bar becomes alert to the increased probability of summary disposition, lawyers responding to a petition for certiorari will likely choose to minimize the risk of summary disposition by taking the additional step of providing a full statement of their argument on the merits. As others have noted, this will only "mean additional and unnecessary work for the lawyer, expense to the client, and unessential reading matter for the already overburdened Court." R. Stern & E. Gressman, Supreme Court Practice 365 (5th ed. 1978). Accord, Brown, Foreword: Process of Law, 72 Harv. L. Rev. 77, 81–82 (1958).

trict Court opinion. And the Court does so in a context in which the Court of Appeals affirmed by an equally divided court, without opinion; there is accordingly no statement of law below that requires correcting. I can only believe that the Court perceives this case as one in which the narrow *Rummel* ruling concerning recidivist statutes can be extended to new terrain without the necessary exertion of argument and briefing. Unfortunately, it is Roger Trenton Davis who must now suffer the pains of the Court's insensitivity, and serve out the balance of a 40-year sentence viewed as cruel and unusual by at least six judges below. I dissent from this patent abuse of our judicial power.[7]

---

[7] In view of this abuse, it is certainly startling that the Court should suggest that the Court of Appeals' affirmance of the District Court in this case was tantamount to "anarchy." *Ante*, at 375. Quite to the contrary, the Court of Appeals has only fulfilled its constitutional responsibility to apply the Court's precedents in light of reason and experience—something that this Court today has plainly failed to do.