Michael D. BARNES, et al., Plaintiffs,

v.

Gerald P. CARMEN, Ronald Geisler, Defendants.

Civ. A. No. 84–0020.

United States District Court, District of Columbia.

March 9, 1984.

Michael Ratner, Center for Constitutional Rights, New York City, for plaintiffs.

Morgan Frankel, Asst. Senate Legal Counsel, Stephen Ross, Clerk, Gen. Counsel to U.S. House of Representatives, Washington, D.C., for plaintiffs-intervenors.

Richard Willard, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

The original plaintiffs are 33 members of the United States House of Representatives, suing individually and as members of the House, of whom 31 voted in favor of a bill known as H.R. 4042 and two did not vote. They are joined by plaintiff-intervenors the United States Senate and the Speaker and bipartisan elected leadership of the House of Representatives.[1] Defendant Geisler is the Executive Clerk of the White House, and defendant Carmen is the Administrator of the General Services Administration. Plaintiffs allege, and defendants acknowledge, that defendant Geisler has a duty to deliver acts of Congress that have become law to the General Services Administration for publication, and defendant Carmen has a duty, under 1 U.S.C. §§ 106a, 112, and 113 (1982), to publish them.

1. The intervenors from the House are Thomas P. O'Neill, Jr., Speaker of the House, Jim Wright, Majority Leader, Robert H. Michel, Minority Leader, Thomas S. Foley, Majority Whip, and Trent Lott, Minority Whip. Both interventions were unopposed.

2. An action seeking a mandatory injunction directing a government official to perform a ministerial, non-discretionary duty is treated as one for mandamus. *National Wildlife Federation v. United States*, 626 F.2d 917, 918 n. 1 (D.C.Cir. 1980); *National Ass'n of Rehabilitation Facilities v. Schweiker*, 550 F.Supp. 357, 362–63 (D.D.C. 1982).

3. H.R. 4042 would continue in effect the provisions of the International Security and Development Cooperation Act of 1981, Pub.L. No. 97–

Plaintiffs seek a declaratory judgment that H.R. 4042, 98th Cong., 1st Sess. (1983), passed by both houses of Congress, but neither signed by the President nor returned by him to the House of Representatives within 10 days (Sundays excepted) after its presentment to him, became a validly enacted law of the United States in accordance with article I, section 7, clause 2 of the Constitution, and they pray that a writ of mandamus or preliminary and permanent injunction issue directing defendants to cause it to be published as a public law.[2] The Court ordered the trial of the action on the merits advanced and consolidated with the hearing on the application for the preliminary injunction pursuant to Fed.R.Civ.P. 65(a)(2), and the parties have since filed cross-motions for summary judgment. The underlying material facts are not in dispute.

## I.

On September 30, 1983, the House of Representatives passed H.R. 4042.[3] The Senate passed it without amendment on Thursday, November 17, 1983. The following day the Speaker of the House and the President Pro Tempore of the Senate signed the bill, and the House Committee on Administration presented it to President Reagan for his consideration. On the same day, November 18th, the 98th Congress adjourned its first session *sine die*,[4] after agreeing by joint resolution to convene its second session on January 23, 1984, which

113, § 728, 95 Stat. 1519, 1555–57 (1981), 22 U.S.C. § 2370 note (1982), to require the President to make certain periodic certifications to Congress with respect to the conduct of the government of El Salvador as a condition of its continued receipt of United States military assistance.

4. The adjournment was conditional, authorizing the Speaker of the House of Representatives and the Majority Leader of the Senate to reassemble the Congress "whenever, in their opinion the public interest shall warrant it." H.Con.Res. 221, 98th Cong., 1st Sess., 129 Cong.Rec. H10105 (daily ed. Nov. 16, 1983).

it did. Prior to adjournment the Senate authorized the Secretary of the Senate to receive messages from the President in its absence; a standing House of Representatives rule confers similar authority on its Clerk.[5] The President neither signed H.R. 4042 into law nor returned it to the House with a veto message. On Wednesday, November 30th, the tenth day after its presentment to him (excluding Sundays) he issued a statement that he was withholding his approval of the bill.[6] Defendants accordingly did not deliver and publish it as law.

## II.

Article I, section 7, clause 2 of the Constitution, the first of the Presentment Clauses, defines the respective powers of the Congress and the President in the enactment of legislation. It provides:

Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; If he approve he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated, who shall enter the Objections at large on their Journal, and proceed to reconsider it. If after such Reconsideration two thirds of that House shall agree to pass the Bill, it shall be sent, together with the Objections, to the other House, by which it shall likewise be reconsidered, and if approved by two thirds of that House, it shall become a Law .... If any Bill shall not be returned by the President within ten Days (Sundays excepted) after it shall have been presented to him, the Same shall be a Law, in like Manner as if he had signed it, unless the Congress by their Adjournment prevent its Return, in which Case it shall not be a Law.

Thus, after both houses of Congress pass a bill and present it to the President, it has one of four possible destinies: the President may sign it into law within ten days; the President may return it with a veto message to the house in which it originated within ten days for reconsideration by both houses; the President may hold the bill for more than ten days without signing or returning it, although he might have returned it, in which case it becomes a law without more; or the President may hold it for more than ten days without signing or returning it, but Congress by its adjournment in the meantime has "prevented" its return, and the bill thus expires by the process which has come to be known as the "pocket veto."

The question presented by this case is, therefore, whether through the third of these eventualities H.R. 4042 became a law, or through the fourth it did not, and the answer to the question depends on whether the adjournment of the first session of the 98th Congress on November 18, 1983, until the commencement of its second session approximately nine weeks later may be said to have prevented the President's returning H.R. 4042 to the House of Representatives with his objections whence Congress might have proceeded with an attempt to override the veto.

Plaintiffs contend that, notwithstanding historical and judicial precedent of the more distant past to the contrary, contemporary conditions as well as more recent authority have made a pocket veto during an intersession adjournment of Congress an anachronism. It is, they say, incompatible with the perceived scheme of the Presentment Clause, *viz.*, that the President and Congress, respectively, have suitable opportunity to consider and object to bills, and to consider objections and override them if it can. They claim it is now a discredited practice, abandoned by the two most recent predecessors of the incumbent President. As a practical matter, plaintiffs assert (and defendants agree), intersession

---

**5.** 129 Cong.Rec. S17192–93 (daily ed. Part IV, Nov. 18, 1983); Rules of the House of Representatives, 98th Cong., 1st Sess., Rule III, clause 5, 129 Cong.Rec. H22 (daily ed. Jan. 3, 1983).

**6.** Statement of Principal Deputy Press Secretary Speakes, Nov. 30, 1983; 19 Weekly Comp.Pres. Doc. 1627 (Nov. 30, 1983).

adjournments of Congress are indistinguishable from intrasession adjournments, even as to their accustomed length.[7] Pending business—except for Senatorial confirmations—remains pending, and the organizations of both houses remain intact. The appointment of agents by both houses to receive and record Presidential messages in the members' absences,[8] and modern means of communication and transportation to enable them to reassemble with dispatch, have eliminated any uncertainty as to a bill's status upon its return with objections to an empty chamber, or any delay in resolving it (if, indeed, there ever were), and have rendered the pocket veto obsolete during all but final adjournments at the end of a Congressional term when Congress, as such, no longer exists.

Defendants argue from original scholarship that the intent of the Framers of the Constitution can be discerned from their rejection of draft language, drawn from a state constitution, which would have precluded a pocket veto altogether and required any veto to be made by return when the legislature was next in session. They point to historical practice demonstrating that virtually every American President since James Madison first did so in 1812 has made intersession pocket vetoes, and that Congress has acquiesced in them—272 in all—which, they say, is compelling evidence of how most Presidents and Congresses have thought the Presentment Clause is to operate. And they assert that the pocket veto serves the important and practical function of promptly resolving the status of bills in Presidential disfavor so that the nation may know the law and the people order their affairs accordingly.

It is, however, not open to this Court to resolve the issue as an original matter, for there are three past decisions—two by the Supreme Court over a generation ago, and a more recent one by the Court of Appeals for the District of Columbia Circuit—which have considered the proper construction to be given the Presentment Clause.[9] Plaintiffs rely on the reasoning of the second of the Supreme Court decisions and that of the court of appeals, while defendants contend that the first Supreme Court case still controls, the other two cases being distinguishable, and the court of appeals case, in any event, wrongly decided.

## III.

In *The Pocket Veto Case,* 279 U.S. 655, 49 S.Ct. 463, 73 L.Ed. 894 (1929) the Supreme Court affirmed the Court of Claims' dismissal of an Indian claims case on the ground that the legislation on which its jurisdiction depended had not become law. The first session of the 69th Congress had passed the bill, which had originated in the Senate, and presented it to President Coolidge on June 24, 1926. On July 3rd, both houses adjourned the first session, in effect, until the beginning of the second session on the first Monday in December and, consequently, were not in session on July 6th, the tenth day (Sundays excepted) after

7. Congress, and each house thereof, often take breaks within each session, referred to as "intrasession" adjournments, which are not *sine die,* since the adjournment resolution will specify the date Congress (or a house) is to return. Such adjournments vary in length from the break at the end of each day, or over a weekend, to longer breaks for holidays, trips back to home districts or states, or campaigns and elections. Most recently intrasession adjournments have tended to be longer than those between sessions, although it was not so a decade ago. One house may, however, not adjourn for more than three days without the consent of the other. U.S. Const., art. I, § 5, cl. 4.

8. Because H.R. 4042 originated in the House, only its arrangements to receive messages are directly relevant to this case. But the Senate had also authorized receipt of messages during its intersession adjournment by an officer, the Secretary of the Senate. *See supra* note 5.

9. A fourth case before another judge of this district court resulted in the entry of a consent judgment granting the relief prayed by these plaintiffs. *Kennedy v. Jones,* 412 F.Supp. 353 (D.D.C.1976). The opinion accompanying the order did not purport to decide the issues now presented, however, and could not, even if it had, serve as authority for the entry of a similar judgment against the non-consenting defendants here. *See United States v. Mendoza,* —— U.S. ——, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984).

the bill had been presented to the President who neither signed nor returned it to the Senate. Justice Sanford stated the issue for a unanimous court as follows:

> This case presents the question whether, under the second clause in Section 7 of Article I of the Constitution of the United States, a bill which is passed by both Houses of Congress and presented to the President less than ten days (Sundays excepted) before the adjournment of that session, but is neither signed by the President nor returned by him to the House in which it originated, becomes a law in like manner as if he had signed it.

279 U.S. at 672, 49 S.Ct. at 463–64. The Supreme Court answered the question in the negative, and, since it is identical to the question presented by the instant case, so must this Court.

The Supreme Court expressly rejected contentions that the ten days given the President to consider a bill and formulate his objections be construed as "legislative" days, i.e., days when Congress was in session, rather than calendar days, and that only final adjournments operate to prevent a veto by return. 279 U.S. at 679–80, 49 S.Ct. at 466–67. Then, as to the suggestion that Congress could appoint agents to receive the President's veto during an adjournment although neither house had done so, the Supreme Court said:

> Aside from the fact that Congress has never enacted any statute authorizing any officer or agent of either House to receive for it bills returned by the President during its adjournment, and that there is no rule to that effect in either House, the delivery of a bill to such officer or agent, even if authorized by Congress itself, would not comply with the constitutional mandate.

Id. at 684, 49 S.Ct. at 468. "In short," it said,

> ... it was plainly the object of the constitutional provision that there should be a timely return of the bill, which should not only be a matter of official record definitely shown by the journal of the House itself, giving the public, certain

and prompt knowledge as to the status of the bill, but should enable Congress to proceed immediately with its reconsideration ....

Id. at 684–85, 49 S.Ct. at 468.

Plaintiffs contend that the two subsequent decisions have so attenuated *Pocket Veto* as to deprive it of controlling force here.

In *Wright v. United States*, 302 U.S. 583, 58 S.Ct. 395, 82 L.Ed. 439 (1938), which plaintiffs say overruled *Pocket Veto sub silentio*, the Supreme Court once again affirmed the Court of Claims in its dismissal of a case for want of jurisdiction which would have been conferred upon it by a Senate bill passed by both houses but vetoed by President Roosevelt who returned the bill unsigned with his objections to the Secretary of the Senate while the Senate alone was in a three-day recess. The Supreme Court held that the adjournment of a single house did not constitute the adjournment of "the Congress," i.e., both houses, contemplated by article I, section 7, as "preventing" a return veto, and it repudiated the dictum of *Pocket Veto* anticipating its disapproval of the use of agents to accept veto messages should either house attempt to appoint one. There is, to be sure, language in the opinion suggesting that, given the relationship between the President and Congress for the enactment of legislation the court discerned as intended by the Presentment Clause, neither the length of an adjournment nor whether either or both houses happened to be out of session when the President's ten days had elapsed would necessarily be determinative of whether a return veto had been prevented. *See* 302 U.S., 596–97, 58 S.Ct. at 400–01. But, speaking of the *Pocket Veto* dictum, the court also took the occasion to recall Chief Justice Marshall's admonition that "general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used," 302 U.S. at 593, 58 S.Ct. at 399, and although the *Wright* court was speaking of *Pocket Veto*'s anticipatory disapproval of the use of agents, the admonition is no less perti-

nent to its own opinion in *Wright*. The Court stated precisely what it intended to rule:

> We hold that where the Congress has not adjourned and the House in which the bill originated is in recess for not more than three days under the constitutional permission while Congress is in session, the bill does not become a law if the President has delivered the bill with his objections to the appropriate officer of that House within the prescribed ten days and the Congress does not pass the bill over his objections by the requisite votes. In this instance the bill was properly returned by the President, it was open to reconsideration in Congress, and it did not become a law.

It expressly declined to predict how it might dispose of a case in which both houses consent to adjournment and a long period of adjournment ensues. "We have no such case before us," it said, "and we are not called upon to conjecture as to the nature of the action which might be taken by the Congress in such a case or what would be its effect." 302 U.S. at 598, 58 S.Ct. at 40.[10]

Thirty-six years later, the Court of Appeals for the District of Columbia Circuit decided *Kennedy v. Sampson*, 511 F.2d 430 (D.C.Cir.1974) in which a United States Senator brought suit against the instant defendants' predecessors to obtain the relief sought against defendants here with respect to a bill known as S. 3148, passed by the 91st Congress in its second session and presented to the President on December 14, 1970, eight days before both houses adjourned for a five-day intrasession Christmas recess, the Senate having authorized its Secretary to receive messages from the President during the adjournment. President Nixon did not, however, attempt to return the bill to the Senate with his objections but declared publicly that he would (as he ultimately did) with-

hold his signature. The district court granted judgment for plaintiff, ordering the bill published as a validly enacted law, and the court of appeals affirmed. Having first found the plaintiff to have standing to raise the issue (upon grounds which control this Court as to any similar question here), the court continued to apply the rationale of *Wright* to the circumstances presented, holding that "the Christmas recess [of Congress] of 1970 did not prevent the return of S. 3148." 511 F.2d at 442. It reached its conclusion, it said, by either of two routes: "the logic, if not the precise holding," of *Wright*, and its own determination that no *intrasession* adjournment, "as that practice is presently understood," could prevent the return of a bill by the President where appropriate arrangements have been made for receipt of presidential messages during the adjournment. *Id.*

Not only did the *Kennedy v. Sampson* court expressly limit its own holding to an intrasession adjournment (which had been, in fact, of only five days' duration), its reasoning depended in large measure upon its understanding of the then-current practice of "much shorter" intrasession than intersession adjournments which had "virtually never occasioned interruptions of the magnitude considered in the *Pocket Veto Case*." *Id.* at 441. And it accompanied its opinion with an appendix demonstrating that Congress' intrasession adjournments had historically tended to be relatively brief and only somewhat recently had come to be regarded as affording Presidents opportunity for a pocket veto.

This Court concludes that neither *Wright* nor *Kennedy v. Sampson* give it license to depart from the only case directly in point, *Pocket Veto*. Unless and until the Supreme Court reconsiders the rule of that case, this Court must, as must all lower federal courts, follow it. *Jaffree v. Board of School Commissioners of Mobile Coun-*

---

**10.** Justices Stone and Brandeis concurred in the judgment that the bill had not become law, but because the Senate had, by its adjournment, "prevented" its return and, thus, effected a pocket veto. They presciently foretold that the ma-

jority opinion would "leave in confusion and doubt the meaning and effect of the veto provisions of the Constitution, the certainty of whose application is of supreme importance." 302 U.S. at 599, 58 S.Ct. at 402.

*ty,* 459 U.S. 1314, 103 S.Ct. 842, 843, 74 L.Ed.2d 924 (Powell, J., Circuit Justice 1983), *on subsequent appeal sub nom. Jaffree v. Wallace,* 705 F.2d 1526 (11th Cir. 1983); *Hutto v. Davis,* 454 U.S. 370, 375, 102 S.Ct. 703, 706, 70 L.Ed.2d 556 (1982); *United States v. Caldwell,* 543 F.2d 1333, 1370 (D.C.Cir.1974), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976); *Breakefield v. District of Columbia,* 442 F.2d 1227, 1229–30 (D.C.Cir.1970), *cert. denied,* 401 U.S. 909, 91 S.Ct. 871, 27 L.Ed.2d 807 (1971); *Quilici v. Village of Morton Grove,* 532 F.Supp. 1169, 1181 (N.D.Ill. 1981), *aff'd* 695 F.2d 261 (7th Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 194, 78 L.Ed.2d 170 (1983).

The Supreme Court has recently considered the Presentment Clauses of article I, section 7 of the Constitution in another context to declare unconstitutional a Congressional practice of some years' standing it found to be at variance with them. Describing the scheme embodied in the Constitution for the sharing of the legislative power as "a single, finely wrought and exhaustively considered procedure," it stated that the fact that the practice might be "efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution." *INS v. Chadha,* —— U.S. ——, 103 S.Ct. 2764, 2780–81, 2784, 77 L.Ed.2d 317 (1983). If similar utilitarian considerations are, in this case, to result in the demise of the intersession pocket veto, the Supreme Court will have to say that *Pocket Veto* is no longer declarative of a procedure a President may constitutionally employ.

For the foregoing reasons, therefore, it is, this 9th day of March, 1984,

ORDERED, that motions of plaintiffs and plaintiff-intervenors for summary judgment, and for preliminary and permanent injunctive relief are denied; and it is

FURTHER ORDERED, that the motion of defendants for summary judgment is granted, and the complaint is dismissed with prejudice.