**F I L E D**

**UNITED STATES COURT OF APPEALS**

**July 28, 2006**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BILLY CUNNINGHAM,

    Defendant - Appellant.

No. 05-8077
(D. Wyoming)
(D.Ct. No. 04-CR-213-B)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

After pleading guilty to one count of attempted child exploitation in violation of 18 U.S.C. § 2251(a) and (e), Billy Cunningham was sentenced to,

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

*inter alia*, 180 months imprisonment, the statutory minimum. He challenges the length of his sentence, claiming the statutory minimum violates his Eighth Amendment constitutional rights and the separation of powers doctrine. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

I.   Background

After four years in the United States Navy and twenty-four years as an employee of the United States Postal Service, Billy Cunningham retired and accepted a part-time position at Lowe's Home Improvement Center in Kingston, Massachusetts. After his retirement, Cunningham purchased a computer for his personal use. On September 28, 2004, Cunningham entered a "Yahoo!" chat room identified for "11-13 year olds ONLY." He initiated communication with "kaylac93," who purported to be an eleven-year-old girl. Unbeknownst to Cunningham, "kaylac93" was the moniker of an undercover United States Immigration and Customs Enforcement (ICE) officer, Special Agent Nicole Balliet.

Cunningham invited "kaylac93" into a private chat room where he asked whether she owned a digital camera and discussed the possibility of her sending him nude pictures of herself. He also expressed a willingness to travel to Wyoming to engage in sexual activity with her. Later the same day, he initiated an instant message discussion for approximately two hours. He again discussed engaging in sexual acts and stated he was comfortable with her age. He e-mailed

nude pictures of himself during the instant message conversation and discussed his desire that she reciprocate. The ICE agent was able to obtain Cunningham's personal identifying information from the e-mail address.

Approximately one week later, Cunningham again initiated an instant message conversation. He again discussed traveling to Cheyenne, Wyoming, to engage in sexual activity and informed her he would be sending her a digital camera to take photographs in various stages of undress. He also offered to send her intimate apparel. Later, he sent an e-mail confirming he had mailed the camera. Cunningham's next e-mail promised her he would mail thong and g-string underwear.

Agent Balliet received the camera on October 11, 2004.[1] After a search of Cunningham's residence, agents found the receipt for the camera. Cunningham acknowledged his actions and provided agents with various photographs of underage girls, some of which were classified as child pornography. He also admitted he had met a teenage girl on the Internet who lived in San Antonio, Texas, and he had been discussing sexual topics with her in the same manner as his conversations with "kaylac93."[2] Seizure of Cunningham's computer revealed

---

[1] The presentence report lists receipt of the camera occurring on October 11, 2005 and the search of Cunningham's residence on December 9, 2005. Given that Cunningham was indicted in November 2004, and pled guilty in May 2005, we assume the reference to dates later in 2005 are typographical errors. In any event, the dates do not affect our analysis.

[2] This contact was another ICE agent.

fifteen to twenty images of child pornography.

Cunningham was indicted for attempted child exploitation and entered a plea of guilty to the charge on May 16, 2005. The plea agreement provided that (1) the November 1, 2003 Guidelines Manual be used, (2) the intended victim was eleven years old, and (3) Cunningham used a computer in connection with the offense. The plea agreement also identified USSG § 2G2.1 as the appropriate guideline for determining his advisory sentence. A presentence report was prepared, to which there were no objections. The report calculated Cunningham's base offense level at twenty-seven. An additional four offense levels were added because his intended victim was eleven years old and another two because he used a computer in the commission of his offense. Three offense levels were deducted because Cunningham timely accepted responsibility, resulting in a final offense level of thirty. Because Cunningham had no prior criminal history, he qualified for Criminal History Category I. Under this calculation, the applicable advisory guideline sentence ranged from 97 to 121 months imprisonment. However, the statutory minimum sentence required imprisonment for 180 months.

At sentencing, Cunningham did not object to the guideline calculations but lodged a general constitutional objection to the statutory minimum sentence. Cunningham did not ask the court to consider his sentence unconstitutional because it violated the Eighth Amendment as cruel and unusual punishment or because it violated the separation of powers doctrine. The district court noted the

disparity between the guideline range and the minimum mandatory sentence required by statute. It expressed its frustration with the seemingly conflicting Congressional instructions and, with regret, imposed the 180 month mandatory minimum. This timely appeal followed.

II.    Discussion

1.    Eighth Amendment

Cunningham contends "[t]he mandatory minimum of 18 U.S.C. § 2251(a) and (e) may not be unconstitutional *per se*, but it is grossly disproportionate as applied to [him] and is, therefore, unconstitutional." (Appellant's Br. at 16.) Normally, we review *de novo* whether a criminal sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. *United States v. Angelos*, 433 F.3d 738, 750 (10th Cir. 2006). In this case, however, because Cunningham raised only a vague and non-specific objection, we review his claim for plain error. *United States v. Yazzie*, 407 F.3d 1139, 1144 (10th Cir.) (*en banc*), *cert. denied*, 126 S.Ct. 303 (2005). To find plain error, we must find (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir.) (*en banc*), *cert. denied*, 126 S.Ct. 495 (2005). We apply the plain error standard of review less rigidly when reviewing a potential constitutional error. *Id*. Nonetheless, we need only address the first prong of the plain error test here.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." In determining whether a sentence for a period of years constitutes cruel or unusual punishment (rather than the manner of punishment), the Supreme Court has recognized, "[t]he Eighth Amendment . . . contains a narrow proportionality principle that applies to noncapital sentences." *Ewing v. California,* 538 U.S. 11, 20 (2003) (internal quotation omitted). The Court has acknowledged it has "not established a clear or consistent path for courts to follow" when faced with a proportionality question. *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). We know, however, the Eighth Amendment "does not require strict proportionality between crime and sentence, . . . . forbid[ding] only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing*, 538 U.S. at 11-12 (quoting *Harmelin v. Michigan,* 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment)). Thus, "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer*, 538 U.S. at 77. This is not such a case.

An appellant has a high hurdle to overcome to demonstrate his sentence violates the Eighth Amendment. In *Angelos*, we catalogued the Supreme Court precedent rejecting Eighth Amendment claims based on prison sentences for a

term of years. *Angelos*, 433 F.3d at 750-51.[3]  Cunningham does not explain how the fifteen years imprisonment he received for attempting to sexually abuse an eleven year old girl is any more grossly disproportionate than a forty year sentence for possession and use of marijuana.  *See Hutto,* 454 U.S. at 375.  Cunningham argues, "[t]o insure justice and equity, . . . it is vital that the sentencing judge have a manner and means by which he can identify the defendant as an *individual*."  (Appellant's Br. at 15.)  While this may be a heartfelt belief, the Supreme Court has "drawn the line of required individualized

---

[3]  [T]he Supreme Court has rejected Eighth Amendment challenges to the following sentences:

• A life sentence, with the possibility of parole, under a Texas recidivist statute for successive convictions of (1) fraudulent use of a credit card to obtain $80 worth of goods or services, (2) passing a forged check in the amount of $28.36, and (3) obtaining $120.75 by false pretenses. *Rummel v. Estelle,* 445 U.S. 263, 285 (1980).

• A forty-year sentence for possession and distribution of 9 ounces of marijuana. *Hutto v. Davis,* 454 U.S. 370, 375 (1982).

• A life sentence, without the possibility of parole, for possession of more than 650 grams of cocaine. *Harmelin,* 501 U.S. at 1005.

• A twenty-five year to life sentence imposed under a California recidivist statute for the offense of felony grand theft (i.e., stealing three golf clubs worth approximately $1,200). *Ewing,* 538 U.S. at 30-31.

• Two consecutive twenty-five-year to life sentences under a California recidivist statute for two counts of petty theft. *Lockyer,* 538 U.S. at 77.

*Angelos*, 433 F.3d at 750-51.

sentencing at capital cases, and see[s] no basis for extending it further."

*Harmelin*, 501 U.S. at 996. Moreover, "[t]here can be no serious contention . . . that a sentence which is not otherwise cruel and unusual becomes so simply because it is 'mandatory.'" *Id*. at 995.

"[T]he fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is properly within the province of legislatures, not courts." *Id*. at 998 (Justice Kennedy concurring in part and concurring in the judgment) (internal quotation omitted) . The statute of conviction, 18 U.S.C. § 2251, was amended by Section 103 of the PROTECT Act on April 30, 2003.[4] Prior to amendment, the mandatory minimum sentence for a violation was ten years. The amendment to a minimum of fifteen years was explained in the House Conference Report:

> The increased mandatory minimum sentences are responsive to real problems of excessive leniency in sentencing under existing law. For example, the offenses under chapter 117 of title 18, United States Code, apply in sexual abuse cases involving interstate movement of persons or use of interstate instrumentalities, such as luring of child victims through the Internet. Courts all too frequently impose sentences more lenient than those prescribed by the sentencing guidelines in cases under chapter 117, particularly in situations where an undercover agent rather than a child was the object of the enticement. Yet the offender's conduct in such a case reflects a real attempt to engage in sexual abuse of a child, and the fact that the target of the effort turned out to be an undercover officer has no bearing on the culpability of the offender, or on the danger he presents to children if not adequately restrained and deterred by criminal punishment. Likewise, courts have been disposed

---

[4] The "PROTECT ACT" is the common reference to the "Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003."

to grant downward departures from the guidelines for child pornography possession offenses under chapter 110, based on the misconception that these crimes are not serious.

H.R. Conf. R. No. 10-866, Joint Explanatory Statement at 51 (commenting on Title 1 § 103(b)(A)). The comment patently illustrates a specific Congressional intent.

While Cunningham may have been a model citizen up to his retirement, he pled guilty to attempting to persuade an eleven year old girl to pose nude and send the picture to him. He e-mailed the child naked pictures of himself. In on-line chats, he stated he would travel to Wyoming if she would have oral and vaginal intercourse. In addition, Cunningham admitted this was not his only victim. Considering these facts, there is no question Cunningham's sentence was not disproportionate to his behavior.

Cunningham argues the disparity between the mandatory minimum sentence imposed in his case and the applicable guideline range is evidence that his sentence is disproportionate. This argument is unconvincing. Cunningham's guideline calculation was derived from the November 5, 2003 Guidelines Manual. However, the applicable guideline, USSG §2G2.1, was amended to reflect the PROTECT Act changes to § 2251. Although the PROTECT Act was effective on April 30, 2003, the associated amendments to the guidelines did not appear until the November 1, 2004 Guidelines Manual was issued. Therefore, had Cunningham waited only five weeks later to commit his criminal acts, the 2004

edition would have applied. Under the amended guideline, his sentencing range would have been 168 to 210 months, a sentencing range encompassing the sentence he received. Accordingly, the district court did not violate Cunningham's Eighth Amendment rights when applying the mandatory minimum sentence.

2.    Separation of Powers

Cunningham claims the minimum sentence of 180 months violates the separation of powers doctrine. Without citing to authority, he declares, "Congress has not imparted or created an[y] measure or mechanism by which a trial court may deviate from a mandatory minimum sentence imposed under 18 U.S.C. § 2251(a) or [(e)]. Therefore, the legislature has improperly divested the judiciary of its discretion and has prohibited it from any measure to avoid imposition of a cruel and unusual sentence as applied in individual cases." (Appellant's Br. at 21.) Again, this argument must be reviewed under a plain error standard.

We need not tarry long. Cunningham's argument is clearly contrary to Supreme Court precedent. In *Lujan v. Defenders of Wildlife*, the Supreme Court observed that "the Constitution's central mechanism of separation of powers depends largely upon common understanding of what activities are appropriate to legislatures, to executives, and to courts." 504 U.S. 555, 559-60 (1992). The Constitution expressly vests the legislative power in Congress, and confers on

Congress the power to enact those laws that are "necessary and proper for carrying into Execution" its powers. U.S. Const., Art. I, §§ 1, 8. Thus, "Congress has the power to define criminal punishments without giving the courts any sentencing discretion." *Chapman v. United States*, 500 U.S. 453, 467 (1991); *see also Ex parte United States*, 242 U.S. 27, 42 (1916) ("[T]he authority to define and fix the punishment for crime is legislative, and . . . the right to relieve from the punishment fixed by law . . . belongs to the executive department."). As a result, the application of the mandatory minimum sentence of 180 months imprisonment to Cunningham did not violate the separation of powers doctrine.

**AFFIRMED**.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge