**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

BRADLEY PRICE BARBER,

      Petitioner-Appellant,

v.

JUSTIN JONES, D.O.C. Director,

      Respondent-Appellee.

No. 07-6170
(D.C. No. 06-CV-1260-W)
(W.D. Okla.)

**ORDER**

Before **LUCERO** and **PORFILIO**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

Bradley Price Barber, a state prisoner proceeding pro se, seeks a certificate of appealability (COA) that would allow him to appeal from the district court's order denying his habeas corpus petition brought under 28 U.S.C. § 2254. Because we conclude that Mr. Barber has failed to make "a substantial showing of the denial of a constitutional right," we deny his request for a COA, and dismiss the appeal. 28 U.S.C. § 2253(c)(2).

**BACKGROUND**

Mr. Barber was convicted after a jury trial in state district court of unlawful manufacturing of a controlled dangerous substance (methamphetamine) after two

or more felony convictions. The district court sentenced him to 50 years' incarceration and a $50,000 fine.[1]

Most of Mr. Barber's issues in this appeal relate to a search of his motel room that uncovered evidence used against him at his trial. The evidence at trial revealed that a "911" operator received a call concerning a possible domestic assault in progress in a room at the Economy Express Motel in El Reno, Oklahoma. The call came from a female subject who claimed to have witnessed the assault. The El Reno Police Department dispatched Officer Bobby Owens to the motel to investigate.

Upon arriving at the motel, Officer Owens knocked on the motel room door and identified himself as a police officer. There was no response. He continued to knock and identify himself as an officer for about two minutes, without receiving any response. He then confirmed the room number with dispatch and had the motel manager bring him a key to the room.

Meanwhile, two more officers, Officers Jourdan and Nelms, arrived at the motel. The officers explained to the manager that they needed to enter the room

---

[1] The jury also convicted him of possession of drug paraphernalia, for which he was sentenced to one year of incarceration in the county jail with no fine. The possession charge was brought in a separate case that was tried together with the unlawful manufacturing case. While his habeas petition addresses only the manufacturing charge, the existence of the separate charge contributed significantly to the jury confusion resulting in his motion for a mistrial that is addressed as one of his issues, *infra*.

to determine whether there was anyone injured or in need of assistance in the room. Officer Owens opened the door with the key the manager brought him.

Inside the room, Officer Owens observed a woman, later identified as Michelle McCormack, lying on the bed. The room's telephone was on the floor, knocked over and upside down with the phone off the hook. Ms. McCormack was fully clothed and did not appear to have been physically abused. She seemed upset, however, to have the officers present. She told them she was fine, behaved in a standoffish manner, and acted as though she wanted them to leave. In response to a question from Officer Owens, she stated that there was no one else in the room.

While Officer Owens questioned Ms. McCormack, Officers Jourdan and Nelms walked through the room to secure it for officer safety. The room had a separate bathroom in back, with its own door. Officer Nelms went back to the bathroom to make sure there was no one hiding in it. He found the bathroom door partially open. The light inside the bathroom was off.

Officer Nelms obtained a flashlight from Officer Owens. He shined the flashlight beam through the space created by the partially opened door onto the toilet and the shower area, but saw no one. When he attempted to open the door wider to continue the search, however, someone pushed the door closed from the inside. Officer Nelms tried to kick the door back open, but it bounced back as though someone were holding it shut.

Officer Nelms announced that he was a police officer and told the person inside to come out. The person stated he was using the toilet. Officer Nelms again told the person to leave the bathroom, which he did. The bathroom's occupant was Mr. Barber. After he removed Mr. Barber, Officer Nelms entered the bathroom to make sure there was no one else in the room. He found no one, but observed the cap from the top of a syringe lying on the bathroom floor.

As he walked back through the motel room, Officer Nelms observed evidence of the presence of illegal drugs and paraphernalia in the room. On the bathroom sink counter he saw a wash tub with milky white water with a syringe floating in it. Across from the bathroom door, on the shelf above the clothes rack, he found two ziploc baggies, one with white powder in it and another with red pills in it. In the main part of the room, he observed a food processor with white powder in it. Next to the food processor was a pill bottle containing pseudoephedrine pills. On a night stand next to the bed, he saw a baggie with a white powder residue inside of it.

The officers arrested Mr. Barber and Ms. McCormack, secured the room, and obtained a search warrant. Execution of the warrant provided more evidence of methamphetamine manufacturing, resulting in the filing of charges and, eventually, in Mr. Barber's conviction.

The Oklahoma Court of Criminal Appeals (OCCA) upheld Mr. Barber's conviction on direct appeal. The district court denied him post-conviction relief,

and the OCCA affirmed.  He then filed this § 2254 proceeding in federal district court.  A magistrate judge assigned to the case recommended that he be denied an evidentiary hearing and that his petition be denied.  After considering his objections to the magistrate judge's report, the district court denied the petition and denied him a COA.  This appeal followed.

## ANALYSIS

### 1.  Standard for Obtaining a COA

"A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  § 2253(c)(2).  This standard requires "a demonstration that ... includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).  In other words, an applicant must show that the district court's resolution of the constitutional claim was either "debatable or wrong."  *Id.*  In determining whether to issue a COA, a "full consideration of the factual or legal bases adduced in support of the claims" is not required.  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  Instead, the decision must be based on "an overview of the claims in the habeas petition and a general assessment of the merits."  *Id.*

## 2. Fourth Amendment Issues Relating to Search

Mr. Barber's first four issues all concern his contention that the search of the motel room violated his Fourth Amendment rights. He argues (1) that he has standing to object to the illegal entry, the initial, warrantless search, and the later, warranted search of the room; (2) that the motel manager lacked authority to grant the officers consent to enter the room; (3) that the officers should have left the room once they determined that no offense had been committed; and (4) that the search warrant affidavit contained unreliable, insufficient, and suppressible information and was therefore invalid.

Mr. Barber litigated his Fourth Amendment issues extensively in the Oklahoma courts. He moved in state district court on four separate occasions to suppress the evidence found in the motel room: at the preliminary hearing, in two separate pretrial motions, and on a motion heard on the first day of trial. He also asserted these issues on direct appeal to the OCCA.

The federal magistrate judge determined that Mr. Barber was not eligible for relief on his Fourth Amendment claims in a § 2254 proceeding. We agree.

Where a state "has provided an opportunity for full and fair litigation of a Fourth Amendment claim," a state prisoner is not entitled to federal habeas corpus relief on the basis that evidence obtained in an illegal search or seizure was presented at his trial. *Stone v. Powell*, 428 U.S. 465, 482 (1976). We review de novo whether a petitioner had a full and fair opportunity to litigate his Fourth

Amendment claims in state court. *Cannon v. Gibson*, 259 F.3d 1253, 1260 (10th Cir. 2001). Having reviewed the record, we conclude that Mr. Barber was provided with such an opportunity. We therefore reject his Fourth Amendment claims.[2]

### 3. Fourth Amendment Issue Relating to Arrest

Mr. Barber next argues that his arrest was illegal and represented an abuse of process, because the police knew that the reporting phone call was not from an actual eyewitness and was not made from his motel room. The magistrate judge ruled that this claim was "merely a reformulation of [Mr. Barber's] Fourth Amendment theories" and was therefore barred by *Stone*. R., doc. 22, at 5. We agree.

Mr. Barber argues that *Stone* does not apply to this issue, because the arresting officers' conduct in "creating an 'exigent circumstance' through fraud and de[]ception . . . was in violation of the 14th Amendment and that is not the same as the 4th Amendment." Aplt. Br. at 16. A person who asserts that his arrest or physical incarceration was unreasonable or unwarranted, however, is making a Fourth Amendment argument–he cannot use the Fourteenth Amendment

---

[2]    Mr. Barber contends that his opportunity to litigate his Fourth Amendment claims was not "full and fair" because his attorney was constitutionally ineffective. This claim is more properly viewed as an assertion of ineffective assistance of counsel than an argument about full and fair opportunity to be heard. In fact, Mr. Barber also raises such an argument as a freestanding ineffective assistance claim, which we consider later in this order.

as "a fallback to protect interests more specifically addressed by the Fourth Amendment in this context." *Becker v. Kroll*, 494 F.3d 904, 919 (10th Cir. 2007). Mr. Barber's claim is a Fourth Amendment claim, and it is barred by *Stone*.

### 4. Ineffective Assistance of Trial Counsel

Mr. Barber next recasts his complaint about that search of his motel room in the form of an ineffective assistance of counsel claim. He argues that his attorney should have identified and subpoenaed the person who made the telephone call to police concerning the alleged domestic violence situation in his motel room, as well as the police operator who took the call. Had these people been questioned, he contends, it could have been established that the person who made the call was not in the room, but at a remote location, thus casting doubt on the theory that exigent circumstances required a warrantless entry into the room.

While *Stone* does not bar this Sixth Amendment claim, to prevail on it, Mr. Barber must establish that his attorney was constitutionally ineffective. Under the two-part test established by the Court in *Strickland v. Washington*, 466 U.S. 668 (1984), he must prove that "counsel's representation fell below an objective standard of reasonableness" and that "any deficiencies in counsel's performance [were] prejudicial to the defense." *Id.* at 688, 692. Both the OCCA and the district court reasoned that Mr. Barber failed to show the alleged omissions prejudiced him, because his attorney presented other, undisputed

evidence that the call originated from outside the room. We agree, and therefore reject his ineffective assistance claim.

### 5. Sufficiency of Evidence Claims

Mr. Barber next asserts two claims based on alleged denial of due process. In his seventh claim, he argues that the case against him should have been dismissed at the preliminary hearing, because the state failed to establish probable cause to bind him over for trial. Once again, his argument contains an allegation that no exigent circumstances existed because the telephone call to the police came from a third party and from a remote location. Therefore, he argues, the evidence found in the motel room should have been suppressed, leaving insufficient evidence to bind him over for trial. But this is just another iteration of his Fourth Amendment argument, which we cannot reach in this habeas proceeding.

Stripped of its Fourth Amendment baggage, the remainder of Mr. Barber's preliminary hearing claim rests on whether there was sufficient evidence to bind him over for trial. For the same reasons cited by the magistrate judge, *see* R., doc. 22, at 13-15, we conclude that there was.

Mr. Barber's eighth claim also rests on an alleged lack of evidence. He asserts that the district court should have granted a directed verdict in his favor because there was insufficient evidence, without the illegally-seized evidence, to convict him of manufacturing methamphetamine. This, however, is merely

another attempt to recast his Fourth Amendment claim into an acceptable form, and it therefore fails.[3]

### 5. Constitutionally Excessive Sentence

Mr. Barber argues that his sentence to 50 years' incarceration and a $50,000 fine represents "cruel and unusual punishment" under the Eighth Amendment to the United States Constitution, particularly given the non-violent nature of his crime. The OCCA procedurally barred this claim, because he failed to raise it on direct appeal. Mr. Barber argued to the OCCA that the procedural bar should be excused because his counsel had been constitutionally ineffective in failing to raise the claim on direct appeal. The OCCA responded that "failure to raise even a meritorious claim does not, in itself, constitute deficient performance." *Id.*, doc. 13, ex. 9, at 6.

---

[3] Mr. Barber attempts to go beyond this argument, however, and contends that even the evidence found as the result of the search fails to show that he actually manufactured methamphetamine. Thus, on page 26 of his brief, he argues:

> There was no working meth lab found. The motel room had been rented by Ms. McCormack. It was testified that various others came and went into and out of the motel room. . . . There was absolutely no evidence that drugs had in fact been manufactured in the motel room, or that Mr. Barber had anything to do with the items found.

This was not how this issue was presented to and decided by the OCCA, however, *see* "Amended Brief in Support of Petition in Error," R., doc. 13, ex. 8, at 25-26; "Order Affirming Denial of Post-Conviction Relief," *id.* ex. 9, at 5, and we therefore decline to consider the issue as expanded in his brief in this appeal.

We have previously criticized the OCCA for use of similar verbiage to reject claims of ineffective assistance of appellate counsel without assessing the merit of the underlying claims. *See Cargle v. Mullin*, 317 F.3d 1196, 1204 (10th Cir. 2003). Here, it is unclear whether the OCCA reflexively denied Mr. Barber's assertion of ineffective assistance or actually considered his underlying Eighth Amendment claim and found *Strickland*'s prejudice element unsatisfied because the claim lacked merit. *See* Order Affirming Denial of Post-Conviction Relief, R., doc. 13, ex. 9, at 6 (stating "[p]etitioner's arguments and authorities fall short of proving appellate counsel was ineffective" and "the authorities cited by Petitioner . . . do not reveal reversible error in the District Court's finding."). But even if we concluded that the OCCA did not conduct an adequate *Strickland* analysis and that we should therefore excuse the procedural bar, the claim fails because Mr. Barber has failed to make a substantial showing of the violation of a constitutional right on this claim.

"A gross disproportionality principle is applicable to sentences for terms of years." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). "[T]he Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." *Ewing v. California*, 538 U.S. 11, 21 (2003). Only in the "exceedingly rare" and "extreme" case, however, will a non-capital sentence be so disproportionate to the offense for which it is imposed that it violates the Constitution. *Lockyer*, 538 U.S. at 73 (quotations omitted).

-11-

Although harsh, Mr. Barber's sentence is not one of those exceedingly rare or extreme cases that stumbles over the gross disproportionality principle. The manufacture of methamphetamine is a serious crime. Mr. Barber had at least six prior felony convictions. The statutory maximum conviction for his manufacturing offense was life imprisonment. We conclude that the sentence he received was not constitutionally grossly disproportionate to the crime. *See, e.g., Harmelin v. Michigan*, 501 U.S. 957, 961-62, 1005 (1991) (upholding life sentence without possibility of parole for possession of more than 650 grams of cocaine); *Hutto v. Davis*, 454 U.S. 370, 371, 375 (1982) (upholding forty-year sentence for possession and distribution of nine ounces of marijuana). We therefore reject his Eighth Amendment argument.

### 6. Equal Protection Claim

Mr. Barber also contends that his sentence offends the Equal Protection Clause because it is disproportionate to the four-year sentence received by his co-defendant, Ms. McCormack. She initially was charged with unlawful manufacture of a controlled dangerous substance, unlawful possession of a controlled dangerous substance, and unlawful possession of drug paraphernalia. She pleaded guilty to one count of maintaining a place for the keeping or selling of a controlled dangerous substance, for which she received the four-year sentence. She testified against Mr. Barber at trial.

The overwhelming majority of the fifty-year sentence Mr. Barber received arose under Okla. Stat. tit. 21, § 51.1(C), which provides that

> [e]very person who, having been twice convicted of felony offenses, commits a subsequent felony offense within ten (10) years of the date following the completion of the execution of the sentence, and against whom the District Attorney seeks to enhance punishment pursuant to this section of law, is punishable by imprisonment in the State Penitentiary for a term in the range of three times the minimum term for a first time offender to life imprisonment."

Mr. Barber has failed to show that Ms. McCormack was eligible for this enhancement.[4]  Moreover, she chose to plead guilty rather than to proceed to trial. She thus was not similarly situated to him for sentencing purposes and his equal protection claim therefore lacks merit.  *See Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006) ("Equal protection is essentially a direction that all persons similarly situated should be treated alike." (quotation omitted)).

### 7.  Denial of Motion for Mistrial

Mr. Barber contends that the trial court should have granted a mistrial (1) after the jury initially returned a non-unanimous verdict, a problem that was corrected; (2) after the jury foreperson marked the verdict forms incorrectly creating an inconsistent verdict, which was also corrected.  The OCCA found

---

[4]    While Ms. McCormack acknowledged at the time of trial that she had been twice convicted of committing a felony, *see* Trial Tr., Vol. II, at 118, it appears that one of those convictions was the conviction in this case, which could not be counted as a "prior" felony for purposes of section 51.1(C).

-13-

these claims procedurally barred because they were not raised on direct appeal.

Mr. Barber argued that his appellate attorney should have raised the claim. For the same reasons noted previously in our discussion of his excessive sentence claim, the OCCA rejected this ineffective assistance argument. Also as previously noted, its reasons for doing so are problematic. Nevertheless, Mr. Barber is not entitled to a COA on this claim.[5]

Although Mr. Barber was charged with manufacturing methamphetamine, the trial court instructed the jury that it could instead convict on the lesser-included offense of unlawful possession of methamphetamine. Accordingly, it submitted three verdict forms to the jury, each form asking it to return a verdict of "guilty" or "not guilty" to one of the following crimes: manufacturing methamphetamine, unlawful possession of methamphetamine, and unlawful possession of drug paraphernalia (the charge in a separate case tried together with this one).

The jury initially returned a verdict of guilty of manufacturing a controlled dangerous substance and unlawful possession of drug paraphernalia. Mr. Barber asked that the jury be polled. During the polling, the foreperson of the jury indicated that this verdict was not her "true and correct verdict." Trial Tr., Vol. III, at 88. The remaining jurors indicated that the verdict was correct. Upon

---

[5] We set out the facts relevant to this claim in some detail. The facts Mr. Barber asserts in his brief pertaining to this claim are, in many cases, inaccurate.

questioning by the trial court, the foreperson indicated that although the jury verdict forms were correctly marked, this was not her verdict. Mr. Barber moved for a mistrial.

The trial court did not grant a mistrial. Instead, it asked the jurors whether they believed that, with additional deliberation, they could reach a unanimous verdict, "whether that be guilty or not guilty." *Id.* at 91. After several jurors nodded yes, the court provided the jury with a second set of the three verdict forms and sent the jurors back for another round of deliberations.

After approximately an hour of deliberations, the jury returned verdict forms showing Mr. Barber guilty of manufacturing methamphetamine and unlawful possession of methamphetamine. They did not mark the paraphernalia form either "guilty" or "not guilty." This verdict was unlawful, because it improperly convicted Mr. Barber of both the crime of manufacturing and the lesser included offense of possession, but reached no verdict on the separate paraphernalia charge. He once again requested a mistrial.

After indicating that he was leaning toward granting a mistrial, the trial court judge decided to ask the jury foreperson to explain the verdict. She stated "I marked the wrong page." *Id.* at 101. The district court then provided the jury with a third set of verdict forms and asked them to deliberate further. This time the jury returned verdict forms showing a consistent verdict, finding Mr. Barber guilty of manufacturing methamphetamine and possession of drug paraphernalia.

-15-

The jury was again polled, and this time each juror indicated that this was his or her verdict.

Mr. Barber renewed his motion for a mistrial. The trial court took the motion under advisement, but denied it the next morning, reasoning that "the Court does have the prerogative of sending a jury back out to correct . . . what appears to be any mistakes." Trial Tr., Vol. IV, at 4.

Mr. Barber argues that the trial court coerced the jury into reaching a unanimous guilty verdict. We do not agree. After one of the jurors indicated she disagreed with the verdict, the trial judge did not suggest what the jury's verdict should be; it merely sent the jury back for further deliberations. There is nothing inherently coercive or unconstitutional in this practice, which is required by state law. *See* Okla. Stat. tit. 22, § 921 ("When a verdict is rendered, and before it is recorded, the jury may be polled on the requirement of either party, in which case they must be severally asked whether it is their verdict, and if any one answer in the negative, the jury *must* be sent out for further deliberation." (emphasis added)). *Cf.* Fed. R. Crim. P. 31(d) ("If the [jury] poll reveals a lack of unanimity, the court *may direct the jury to deliberate further* or may declare a mistrial and discharge the jury." (emphasis added)). The fact that the jury took another hour to reach a unanimous verdict also suggests an absence of coercion. *See Lyell v. Renico*, 470 F.3d 1177, 1184 (6th Cir. 2006) ("After the court sent the jury back to deliberate [because one juror dissented from the verdict during the

poll], it took an hour for the jury ultimately to reach a unanimous verdict . . . suggesting that when [the juror] changed her mind . . . coercion was not the cause.").

The fact that the foreperson mis-marked the verdict form after the further deliberations the trial court ordered, and was then instructed to correct the form, does not indicate an unconstitutional level of coercion, even when combined with the earlier instruction to continue deliberations. *See, e.g., Jones v. Estelle*, 538 F.2d 651, 651-52 (5th Cir. 1976); *Anderson v. Miller*, 346 F.3d 315, 316-24, 329-30 (2d Cir. 2003) (denying habeas relief where single juror dissented from initial verdict during first poll; jurors were ordered to continue deliberations; jury then returned inconsistent verdict; court required further deliberations; jury returned third verdict convicting defendant of all three counts, including lesser included offense; two jurors were "crying" and "hesitant" during second poll taken after third verdict; court adjusted third verdict to be consistent by dismissing conviction for lesser-included offense; and two jurors later signed affidavits and testified at subsequent evidentiary hearing that their verdict was "not guilty" and they had been coerced by fellow jurors into third, guilty verdict).

## 8. Ineffective Assistance of Appellate Counsel

Mr. Barber next argues that his appellate counsel was constitutionally ineffective for failing to raise in his direct appeal the issues he later presented in his application for post-conviction relief. For the reasons we have explained,

-17-

Mr. Barber fails to show prejudice sufficient to satisfy the *Strickland* test–a likelihood of a different outcome on his direct appeal–had the issues been presented by his appellate counsel. We therefore reject his ineffective assistance claim.

### 9. Evidentiary Hearing

As the magistrate judge explained, *see* R., doc. 22, at 27-28, Mr. Barber's request for an evidentiary hearing is governed by pre-AEDPA standards, which afford him an evidentiary hearing only if factual proof of his allegations would have justified habeas relief. *See Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998). We agree with the magistrate judge that on the issues he has raised, the proof to be adduced at such a hearing would not support habeas relief. We therefore reject his claim of entitlement to an evidentiary hearing.

### CONCLUSION

We grant Mr. Barber's motion to proceed on appeal in forma pauperis. *See* 28 U.S.C. § 1915. His request for a COA is DENIED and this appeal is DISMISSED.

Entered for the Court,

ELISABETH A. SHUMAKER, Clerk