# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-KA-01587-SCT

*WILLIE NASH a/k/a WILLIE COLE NASH*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/23/2018 |
| TRIAL JUDGE: | HON. MARK SHELDON DUNCAN |
| TRIAL COURT ATTORNEYS: | BRIAN KENNEDY BURNS |
| | BRITTANY WHITE BROWN |
| | MITCHELL DEE THOMAS |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM B. BARDWELL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MATTHEW WYATT WALTON |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/09/2020 |
| MOTION FOR REHEARING FILED: | 01/23/2020; DENIED AND OPINION MODIFIED ON PAGE 1 AND AT ¶ 13 - 04/09/2020 |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., MAXWELL AND GRIFFIS, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.    A jury found Willie Nash guilty of possession of a cell phone in a correctional facility. Nash does not appeal the jury's verdict. He only challenges his sentence, twelve years in prison. He claims the twelve-year sentence is grossly disproportionate to the crime and thus violates the Eighth Amendment.

¶2. Though harsh, Nash's sentence falls within the statutory range of three to fifteen years. And the judge based his sentencing decision on the seriousness of Nash's crime and evidence of Nash's criminal history. Because Nash has not shown that a threshold comparison of the crime committed to the sentence imposed leads to an inference of gross disproportionality, no further analysis is mandated. We affirm Nash's conviction and sentence.

### Background Facts and Procedural History

¶3. While confined at the Newton County Jail on a misdemeanor charge, Nash asked a jailer for "some juice." At first, the jailer thought Nash was asking for something to drink. But then Nash slid across a cell phone that he had on his person. The jailer took the phone and gave it to the sheriff's deputy in charge. Nash later denied the phone was his. But when the deputy sheriff unlocked the phone—using the code Nash had given the jailer—he found photos of Nash, as well as a text-message exchange from the day Nash had handed over the phone in jail. The incoming message asked, "WYA" (short for "where you at"), and the outgoing message responded, "in jail."

¶4. A jury convicted Nash of possessing a cell phone in a correctional facility in violation of Mississippi Code Section 47-5-193 (Rev. 2015). Any person who violates Section 47-5-193 "shall be guilty of a felony and upon conviction shall be punished by confinement in the Penitentiary for not less than three (3) years nor more than fifteen (15) years . . . ."[1] Miss. Code Ann. § 47-5-195 (Rev. 2015). At Nash's sentencing hearing, the trial judge informed

---

[1] Nash's conviction also carried a potential fine of up to $25,000. Miss. Code Ann. § 47-5-195. Nash was fined $5,000.

Nash that, while his crime may have seemed insignificant to him, there was a reason possessing a cell phone in a correctional facility "is such a serious charge." The judge also told Nash to "consider yourself fortunate." Based on Nash's prior burglary convictions, he could have been indicted as a habitual offender. This would have subjected him to a fifteen-year sentence to be served day for day. Miss. Code Ann. § 99-19-81 (Supp. 2019). The trial court sentenced Nash below the statutory maximum to a term of twelve years in the custody of the Mississippi Department of Corrections.[2]

¶5.     Nash filed a motion for new trial challenging the sufficiency of the State's evidence and the trial court's evidentiary rulings. The trial court denied this motion, and Nash appealed.

### Discussion

¶6.     On appeal, Nash challenges his sentence only. He argues his twelve-year sentence violates the Eighth Amendment of the United States Constitution because it is grossly disproportionate to his crime of possessing a cell phone in jail.

¶7.     The State argues Nash failed to preserve his claim because he did not challenge his sentence's proportionality before the trial court either at sentencing or in his motion for a new trial.     Despite the State's assertion,[3] we address the merits of Nash's sentence-

---

[2] Nash will become parole eligible after serving a quarter of his sentence. Miss. Code Ann. § 47-7-3(1) (Supp. 2019).

[3] As was the case in ***Portis v. State***, 245 So. 3d 457, 474 n.15 (Miss. 2018), we have serious doubts concerning Nash's reasonable opportunity to raise this issue at trial. It would have been difficult for Nash to have teed up the proportionality issue at his sentencing hearing without yet knowing where in the three-to-fifteen-year range his sentence would fall. And the new Mississippi Rules of Criminal Procedure do not provide a clear vehicle for a

based claim. As we recently noted, Eighth Amendment challenges assert an important constitutional right, and this Court "will indulge in every reasonable presumption against the waiver of a constitutional right." ***Portis v. State***, 245 So. 3d 457, 474 n.15 (Miss. 2018) (quoting ***Brooks v. State***, 903 So. 2d 691, 695 (Miss. 2005)); *see also* ***Edwards v. State***, 800 So. 2d 454, 468-69 (Miss. 2001) (addressing the merits of the defendant's sentence proportionality, despite being "not bound" to consider statistical evidence that was not first presented to the trial court).[4]

## I. Severity of Crime

¶8. Nash begins his proportionality challenge by asking this Court to recognize "differing degrees of transgression" under Section 47-5-193. Section 47-5-193 prohibits any offender confined to a correctional facility from possessing "any weapon, deadly weapon, unauthorized electronic device, contraband item, or cell phone or any of its components or accessories to include, but not limited to, Subscriber Information Module (SIM) cards or chargers." Nash argues this statute creates "three categories . . . of a descending order in

post-trial challenge to a sentence *only*. Rule 25.1 permits a trial court to vacate a *judgment* and grant a *new trial*. MRCrP 25.1. But that is not what Nash is seeking with his proportionality claim. He does not ask to set aside his judgment of conviction and have a new trial. Rather, he seeks a new, lesser sentence. The same is true of a Rule 25.2 motion to vacate judgment. The rule permits a trial court to vacate a judgment "if the indictment or charging affidavit did not charge an offense, or if the trial court was without jurisdiction." MRCrP 25.2(a). It does not permit a defendant to move to vacate a sentence only based on alleged constitutional deficiencies.

[4] *But see* ***Horne v. State***, 825 So. 2d 627, 641 (Miss. 2002) (refusing to engage in proportionality analysis for the first time on appeal, because life in prison was the only sentencing option, and the defendant "never asked the circuit court to perform a proportionality review").

severity." As Nash sees it, possession of weapons is the most serious offense, possession of contraband is less serious, and possession of a cell phone—if not used in criminal activity—is the least serious.

¶9.     But the statute's language does not support his three-tiered argument. Nothing in the language of Section 47-5-193 suggests the Legislature intended to assign different levels of severity or punishment depending on whether one possessed a weapon, contraband, or a cell phone. Rather, Section 47-5-195 explicitly treats all violations of Section 47-5-193 equally. "Any person who violates *any provision* of Section 47-5-193 . . . shall be guilty of a felony and upon conviction shall be punished by confinement in the Penitentiary for not less than three (3) years nor more than fifteen (15) years . . . ." Miss. Code Ann. § 47-5-195 (emphasis added).

¶10.    What Nash dubs as the "mere possession of a cell phone" is a specified violation of Section 47-5-193. And the statute subjected him to the same potential punishment as any other violation of Section 47-5-193—imprisonment for not less than three years and not more than fifteen years. Miss. Code Ann. § 47-5-195.

¶11.    Nash's twelve-year sentence fell within this statutory range. And "the general rule in this state is that a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute." *Fleming v. State*, 604 So. 2d 280, 302 (Miss. 1992).

## II.     Proportionality of Sentence

¶12.    There is, however, a very limited and rarely imposed exception to the general rule. *Id.* "The Eighth Amendment, which forbids cruel and unusual punishments, contains a

5

'narrow proportionality principle' that 'applies to noncapital sentences.'"[5] *Ewing v. California*, 538 U.S. 11, 20, 123 S. Ct. 1179, 1185, 155 L. Ed. 2d 108 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-97, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (Kennedy, J., concurring in part and concurring in judgment)).

¶13.    In years past, this Court reviewed proportionality using the three-part test from *Solem v. Helm*, 463 U.S. 277, 292, 103 S. Ct. 3001, 3010, 77 L. Ed. 2d 637 (1983). *Hoops v. State*, 681 So. 2d 521, 538 (Miss. 1996).[6]   But "*Solem* must now be viewed in the light of *Harmelin v. Michigan*, 501 U.S. 957 . . . ." *McGruder*, 954 F.2d at 315.   "*Harmelin* provoked a host of minority opinions" from the Supreme Court. *Id.*   On rehearing, we acknowledge that in 1996 this Court in *Hoops* erroneously characterized *Harmelin* as overruling *Solem* "to the extent that it found a guarantee of proportionality in the Eighth Amendment." *Hoops*, 681 So. 2d at 538 (citing *Smallwood v. Johnson*, 73 F.3d 1343, 1346 n.4 (5th Cir. 1996)).   The genesis of this erroneous statement of law came from a quote from the Fifth Circuit Court of Appeals, which promoted that the Eighth Amendment contained no proportionality principle, a suggestion found in Justice Scalia's opinion in *Harmelin*—an

---

[5] In recognizing this narrow principle, the United States Supreme Court cautioned that "federal courts should be reluctant to review legislatively mandated terms of imprisonment, and that successful challenges to the proportionality of particular sentences should be exceedingly rare." *Ewing*, 538 U.S. at 22 (quoting *Hutto v. Davis*, 454 U.S. 370, 374, 102 S. Ct. 703, 70 L. Ed. 2d 556 (1982) (per curiam)).

[6] In *Solem*, the United States Supreme Court "adopted a framework of objective factors that may be used in proportionality analysis: (1) the gravity of the offense relative to the harshness of the penalty, (2) the sentences imposed for other crimes in the jurisdiction, and (3) the sentences imposed for the same crime in other jurisdictions." *McGruder v. Puckett*, 954 F.2d 313, 315 (5th Cir. 1992) (citing *Solem*, 463 U.S. at 292).

opinion that ultimately did not fully carry the day. Instead, "[t]he controlling opinion [in *Harmelin*] concluded that the Eighth Amendment contains a 'narrow proportionality principle,' that 'does not require strict proportionality between a crime and sentence' but rather 'forbids only extreme sentences that are "grossly disproportionate" to the crime.'" *Graham v. Florida*, 560 U.S. 48, 59-60, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (quoting *Harmelin*, 501 U.S. at 997, 1000-01 (Kennedy, J., concurring in part and concurring in judgment)). Thus, to determine if a particular sentence is grossly disproportionate, a court must first compare the gravity of the offense to the severity of the sentence. *Id.* Only in the exceedingly "'rare case in which this threshold comparison leads to an inference of gross disproportionality'" should the court "then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with sentences imposed for the same crime in other jurisdictions." *Id.* at 60 (quoting *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring in part and concurring in judgment)).

¶14. In arguing gross disproportionality, Nash invokes *Davis v. State*, 724 So. 2d 342, 344 (Miss. 1998). In that case, Melissa Davis received the maximum available sentence of sixty years in prison for selling two rocks of cocaine within 1,500 feet of a church. But on appeal, this Court found no record justification for the trial court's imposing the most severe punishment available. *Id.* So this Court remanded for the trial judge to conduct proportionality review under *Solem*. *Id.*

¶15. In *Ford v. State*, this Court later explained its reasoning in *Davis*. *Ford v. State*, 975 So. 2d 859, 870 (Miss. 2008). The *Ford* Court noted that Davis, a first-time offender, was

7

given the maximum sentence without any seeming justification. *Id.* "Because the trial judge did not use discretion in and simply opted for the maximum penalty, this Court remanded the cases for reconsideration." *Id.* (citing *Davis*, 724 So. 2d at 344). By contrast, the sentence in *Ford*, while severe, did not raise the same proportionality concerns. Though Ford was also a first-time offender, she was not given the maximum penalty of twenty years for aggravated assault. *Id.* And before imposing a seventeen-year sentence, the trial judge "expressed concerns about the severity of the crime." *Id.*

¶16. Here, in contrast to *Davis*, the trial judge did not simply opt for the maximum penalty without justification. Instead, the judge exercised his discretion after reviewing a presentence-investigation report. Similar to *Ford*, the judge emphasized that possession of a cell phone in a correctional facility was a serious charge. And unlike *Davis* and *Ford*, Nash was a documented repeat offender. The judge noted that Nash's prior felony convictions subjected him to fifteen years' imprisonment, to be served day for day, had the State charged him as a habitual offender.

¶17. While obviously harsh, Nash's twelve-year sentence for possessing a cell phone in a correctional facility is not grossly disproportionate. *Cf. Tate v. State*, 912 So. 2d 919, 934 (Miss. 2005) (holding a sixty-year sentence for drug distribution, while "certainly harsh," was not grossly disproportionate). The sentence is within the statutory limits. *See Mosley v. State*, 104 So. 3d 839, 842 (Miss. 2012) (holding that sentences totaling 126 years for three drug-possession charges, though severe, did not lead to an inference of gross disproportionality, because the sentences "clearly fall within the statutory limits"). It is also

8

commensurate with other sentences imposed for the same crime. *E.g.*, ***Smith v. State***, 275 So. 3d 100, 103 (Miss. Ct. App. 2019) (defendant sentenced as a habitual offender to serve fifteen years, day for day, for possession of a cell phone in a county jail); ***Houston v. State***, 150 So. 3d 157 (Miss. Ct. App. 2014) (defendant sentenced to fifteen years, with five suspended, for possession of a SIM card in a correctional facility). For these reasons, no *Solem* analysis is required.

¶18. We affirm Nash's conviction and sentence.

¶19. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS, P.J., COLEMAN, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR. KING, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.; ISHEE, J., JOINS IN PART. ISHEE, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

**KING, PRESIDING JUSTICE, SPECIALLY CONCURRING:**

¶20. I agree that, with regard to Nash's sentence, this Court has reached the correct result under our caselaw. However, I write separately to voice my concern over this case as a whole—it seems to demonstrate a failure of our criminal justice system on multiple levels.

¶21. First, it is highly probable that the Newton County Jail's booking procedure was not followed in Nash's case. An officer at the jail testified that all inmates were strip-searched when booked, although that officer did not book Nash. Yet Nash went into the jail with a large smartphone that would have likely been impossible to hide during a strip search. That officer also testified that all inmates were told during booking that they could not bring

9

phones into the jail. But Nash's behavior was that of a person who did not know this, as he voluntarily showed the officer his phone and asked the officer to charge it for him.

¶22. Second, the officer who booked Nash the night before the cell phone incident did not testify at trial. It is consequently unknown whether booking procedures were actually followed in Nash's case. Furthermore, had this officer testified that booking procedures were followed for Nash, he could have been questioned on cross-examination about how he possibly missed a large smartphone during a strip search. It seems problematic to potentially allow someone into the jail with a cell phone, and then to prosecute that person for such action.

¶23. Third, I note that Nash's criminal history evinces a change in behavior. Both his previous convictions were for burglary. His last conviction was in 2001, and he was sentenced to serve seven years. So, for approximately eight to ten years,[7] Nash has stayed out of trouble with the law. He has a wife and three children who depend on him. Combining this fact with the seemingly innocuous, victimless nature of his crime,[8] it seems it would have been prudent for the prosecutor to exercise prosecutorial discretion and decline to prosecute or to seek a plea deal. In that same vein, it would have been prudent for the

---

[7]The record does not indicate the date on which Nash was released from jail after serving this sentence.

[8]I do not suggest that possessing a cell phone in a correctional facility is always an innocuous crime. Indeed, those who are serving sentences and have contraband cell phones snuck into jail for them are not committing innocuous acts. However, the facts of this case indicate that Nash's cell phone was simply missed during booking and that he was not secreting it from law enforcement or using it for any nefarious means. He used it simply to communicate to his wife where he was.

10

judge to use his judicial discretion in sentencing to sentence Nash to a lesser sentence than that of twelve years.

¶24. Cases like Nash's are exactly why prosecutors and judges are given wide discretion. Nash served his time for his previous convictions and stayed out of trouble with the law for many years. He has a wife and three children who rely on him. His crime was victimless, and the facts of the case lend themselves to an interpretation that his crime was accidental and likely caused by a failure in booking procedures. Nash did not do anything nefarious with his phone, and he certainly did not hide his phone from law enforcement. While I do not think this Court can find under the law that the trial court abused its discretion in sentencing, it is a case in which, in my opinion, both the prosecutor and the trial court should have taken a more rehabilitative, rather than punitive, stance.

**KITCHENS, P.J., JOINS THIS OPINION. ISHEE, J., JOINS THIS OPINION IN PART.**

11