

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00260-CR

_____

TIMOTHY NORMAN SIDLAUSKAS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. DC30-CR2021-1098

---

Before Bassel, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellant Timothy Norman Sidlauskas pleaded guilty to the offense of indecency with a child by sexual contact and elected to have the trial court assess his punishment. After hearing punishment evidence, the trial court sentenced Sidlauskas to twelve years' confinement. In a single issue on appeal, Sidlauskas argues that his sentence was grossly disproportionate. We will affirm.

## I. BACKGROUND

### A. VICTIM'S TESTIMONY

Sidlauskas was accused of touching twelve-year-old Heather's[1] breast over her clothing in May 2021. Heather testified at the punishment hearing that she had known Sidlauskas most of her life because they went to church together. He was someone that Heather interacted with and trusted. One day after school, Heather walked past Sidlauskas's house on her way to her grandmother's. Sidlauskas came out of his house and started talking to Heather. During the conversation, Sidlauskas touched Heather's breast over her shirt, and she attempted to leave. Sidlauskas then put his hand on her face and kissed her, putting his tongue in her mouth. Heather then pushed him away and started to run home. As she was running, Sidlauskas yelled, "Sorry. I'm just a man."

---

[1]To protect the minor victim's anonymity, the State referred to her using the pseudonym "Heather," and we will do the same. *See McClendon v. State*, 643 S.W.2d 936, 936 at n.1 (Tex. Crim. App. 1982).

Heather testified that this was the first time she had kissed a boy. The incident scared her, and she feared that "it would happen again." She reported the abuse a few weeks later at a church camp because she "wanted to get [Sidlauskas] out of" her life. Heather testified that the incident had changed her life and caused her anxiety for which she sought counseling.

### B. MOTHER'S TESTIMONY

Heather's Mother testified that Heather was ordinarily a "loving" and "cheerful" person but that, since the incident with Sidlauskas, she had become more "clingy" with Mother and suffered from heightened anxiety. Specifically, Heather now finds it difficult to be in public and to attend church—she avoids places where she might encounter older men. Mother confirmed that Heather had been in counseling to help her deal with this anxiety and also testified that she believed it was in Heather's best interest for Sidlauskas to be imprisoned rather than "let out in the community."

### C. SIDLAUSKAS'S CONFESSION

After authorities were alerted to the incident, they interviewed Sidlauskas. A video of this interview was admitted as evidence at the punishment hearing. Sidlauskas initially asserted that he had only kissed Heather. Calling himself an "old man"[2] and Heather a "little girl," he conceded that it was wrong for him to have

---

[2]Sidlauskas was fifty-nine years old at the time of the incident with Heather.

3

kissed her. When asked specifically if he had touched her, Sidlauskas then admitted that he had touched her breast one time. Though Sidlauskas admitted that he should not have touched Heather—whom he believed to have been about thirteen years old at the time—he opined that "she used to be a little fat girl and now she's looking pretty nice" and that she had "grown up a little bit" and "was too mature for her age." He also pointed out that at church Heather would come "all the way across the auditorium" to "hug on" him.

Sidlauskas said that he understood that what he had done was wrong but also told the interviewing officer that the incident had happened on his property "if that makes a difference." He explained that Heather had told him that she might be walking by his house every day after school, and Sidlauskas suggested that he may have touched her to scare her from walking by his house again. According to Sidlauskas, if Heather walked by his house again he would go talk to her.

### D. DEFENSE EXPERTS

Dr. Stacey Shipley, a forensic psychologist, testified that she had assessed Sidlauskas for approximately five hours. She explained that Sidlauskas had suffered a head injury after crashing his motorcycle in 1989. As a result of this injury, Sidlauskas now exhibits problems with ambulation, "mild to moderate cognitive deficits," impulsivity, and difficulty recognizing social cues and thinking through long-term consequences. Shipley opined that Sidlauskas would be a suitable candidate for sex-offender treatment outside of a prison setting because the incident with Heather was

4

the first time he had committed a sex offense, it was an impulsive action rather than predatory abuse, and he was remorseful. She also surmised that Sidlauskas's physical and cognitive limitations, coupled with the facts that the incident had occurred in public, unplanned, and with no effort to conceal it, all mitigated against Sidlauskas's reoffending. Shipley conceded that there are sex-offender programs available to prison inmates.

Dr. Emily Orozco-Crousen, a licensed counselor and sex-offender treatment provider, testified that she had tested Sidlauskas and determined that he was "low risk for future sexual offenses." Orozco-Crousen stated that Sidlauskas did not fall under the definition of a sexual predator, and she explained that sending low-risk offenders to be housed in prisons with high-risk offenders can sometimes make the low-risk offender more dangerous. Orozco-Crousen also reported that Sidlauskas's criminal history included two DWI offenses and a public intoxication offense.

### E. OTHER DEFENSE WITNESS TESTIMONY

Sidlauskas's two sisters and former Sunday school teacher also testified. His sisters explained that Sidlauskas had been honorably discharged from the Army after five years of service and that his motorcycle crash had caused him to have reduced mobility and issues with anger, irritability, and impulsivity. They testified that they would help Sidlauskas meet the terms of his probation if the trial court sentenced him to probation. Sidlauskas's former Sunday school teacher testified that Sidlauskas had

been very involved with the church and had always exhibited appropriate behavior there.

## F. SENTENCING

After the close of evidence, the trial court recessed the proceedings "to make sure that [it had] enough time to review" the entirety of Sidlauskas's interview video. The next morning, the trial court sentenced Sidlauskas to twelve years' confinement. Sidlauskas filed a motion for new trial.[3] At the hearing on his motion, Sidlauskas argued that his sentence was "excessive considering the circumstances of this case," which involved contact with the victim's breast over her clothing, rather than direct contact with her genitalia. Sidlauskas characterized his actions as falling "in the lower half of those types of [indecency] offenses" while his sentence fell "in the upper half of what a sentence could be."[4] The trial court denied his motion, and Sidlauskas appealed.

---

[3]Sidlauskas raised three grounds in his motion for new trial: (1) the judgment and sentence were "contrary to the law and the evidence," (2) the evidence was factually and legally insufficient, and (3) the interest of justice required a new trial. *See* Tex. R. App. P. 21.3 (enumerating grounds upon which a new trial must be granted).

[4]Sidlauskas argues on appeal—and the State does not dispute—that he adequately preserved his issue for our review because, although he did not explicitly state to the trial court that his sentence was "disproportionate," his argument at the new-trial hearing was specific enough to inform the trial court of this complaint. We agree with Sidlauskas and will, thus, consider the merits of his appeal. *See Resendez v. State*, 306 S.W.3d 308, 312–13 (Tex. Crim. App. 2009) ("Although there are no technical considerations or forms of words required to preserve an error for appeal, a party must be specific enough so as to let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him

6

## II. DISCUSSION

Sidlauskas raises a single issue on appeal: that a twelve-year sentence of confinement is "grossly disproportionate and unconstitutional under the Eighth Amendment."

### A. APPLICABLE LAW

We review a sentence imposed by a trial court for an abuse of discretion. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). The Eighth Amendment—made applicable to the states through the Fourteenth Amendment—prohibits the imposition of "cruel and unusual punishments." U.S. CONST. amends. VIII, XIV; *Graham v. Florida*, 560 U.S. 48, 58–60, 130 S. Ct. 2011, 2020–22 (2010); *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). Generally, if a sentence is within the statutory limits, it is not excessive, cruel, or unusual. *Simpson*, 488 S.W.3d at 323. In fact, a trial court has "essentially 'unfettered'" discretion to impose any sentence within the prescribed statutory range, and any sentence within the statutory limits is virtually "unassailable" on appeal provided that it is based upon the sentencer's informed normative judgment. *Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006) (quoting *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990)). However, a narrow exception to this general rule exists: the Eighth

---

at a time when the trial court is in a proper position to do something about it.") (internal quotations omitted); *Mullins v. State*, 208 S.W.3d 469, 470 at n. 2 (Tex. App.—Texarkana 2006, no pet.) (stating that a motion for new trial is an appropriate avenue for preserving disproportionate-sentencing issues).

Amendment prohibits noncapital punishment within the statutory limits if the sentence is grossly disproportionate to the offense. *Graham*, 560 U.S. at 59–60, 130 S. Ct. at 2021–22; *Simpson*, 488 S.W.3d at 322. Although the "precise contours [of the gross-disproportionality exception] are unclear," one thing is certain: it applies "only in the exceedingly rare or extreme case." *Harmelin v. Michigan*, 501 U.S. 957, 998–1001, 111 S. Ct. 2680, 2703–05 (1991) (Kennedy, J., concurring in part and concurring in judgment); *Simpson*, 488 S.W.3d at 322–23.

To determine whether a noncapital sentence qualifies for this uncommon and "somewhat amorphous" exception, we begin with a threshold analysis comparing the gravity of the offense to the severity of the sentence. *Graham*, 560 U.S. at 60, 130 S. Ct. at 2022; *Simpson*, 488 S.W.3d at 323; *Chavez*, 213 S.W.3d at 323–24, 324 n.20. Assessing the gravity of the offense requires us to consider (1) the defendant's culpability, (2) his prior adjudicated and unadjudicated crimes, and (3) the harm caused or threatened to the victim and to society. *Simpson*, 488 S.W.3d at 323. We weigh these factors against the defendant's sentence, looking to precedent for guidance as to the constitutional limits of proportional severity. *Hutto v. Davis*, 454 U.S. 370, 374–75, 102 S. Ct. 703, 705–06 (1982) (per curiam).

In the rare case where this threshold analysis indicates gross disproportionality, we proceed to steps two and three by comparing the defendant's sentence with those received by similar offenders in this jurisdiction and with those imposed for the same

crime in other jurisdictions. *Simpson*, 488 S.W.3d at 323; *see also Solem v. Helm*, 463 U.S. 277, 296–300, 103 S. Ct. 3001, 3012–15 (1983).

Sidlauskas's is not a rare case; his sentence is well within constitutional bounds, so we need only address step one.

## B. GRAVITY OF THE OFFENSE

### 1. Culpability

Though Sidlauskas undisputedly had a mild to moderate cognitive deficit and impulsivity issues, his culpability—or blameworthiness—was still relatively high. *See Bolar v. State*, 625 S.W.3d 659, 666 (Tex. App.—Fort Worth 2021, no pet.). In analyzing a defendant's culpability, we consider factors such as the defendant's age at the time of the offense, his motive and intent to commit the crime, his role as the primary actor or as a party to the offense, and his acceptance of responsibility. *Id.* Here, Sidlauskas—the sole actor to the offense—was a fifty-nine-year-old man who admitted in his interview that he knew his conduct was wrong. Despite this, he made repeated efforts to justify or explain away his touching of Heather: stating that it had occurred on his property; that Heather used to be "a fat little girl" who was now "looking pretty nice"; that Heather had "grown up a little bit" and "was too mature for her age"; that she used to travel across the church auditorium just to "hug on" him; and that he may have touched her breast to scare her from walking by his house again. Most of these statements indicate that his motive and intent in assaulting

Heather was to gratify himself sexually.  Thus, Sidlauskas was significantly culpable for his crime.

## 2.  Criminal History

Sidlauskas's criminal history, though it did not include any other sexual crimes, is not de minimis—it included two DWIs and a public intoxication.  This factor does not weigh significantly in either direction.

## 3.  Harm Caused Or Threatened To Heather And Society

Sidlauskas argues that, other than being uncomfortable around older men, "there doesn't appear to be much other harm done to [Heather]."  He highlights that Heather has been in counseling that has helped her and that he "was willing to help with the cost of counseling and rehabilitation."[5]  We do not join Sidlauskas in dismissing the harm done to Heather or the harm threatened to society by his actions.

In classifying indecency with a child by contact as a second-degree felony subject to a punishment of confinement for between two and twenty years, the legislature has made clear just how harmful it believes Sidlauskas's conduct to be.  *See* Tex. Penal Code Ann. §§ 12.33(a) (setting punishment range for second-degree felonies); 21.11(a)(1), (d) (outlining offense of indecency with a child by sexual contact).  To be sure, sexually touching a child is a serious offense that harms not only

---

[5]The only indication from the record supporting Sidlauskas's assertion that he "was willing to help with the cost of counseling and rehabilitation" came through a question from his attorney on cross-examination of Mother that Sidlauskas might be ordered to pay restitution and costs of counseling as a term of probation.

the victim but also society, which has a vested interest in protecting children—its most vulnerable members. *See Wade v. State*, No. 02-21-00206-CR, 2023 WL 1859797, at \*3 (Tex. App.—Fort Worth Feb. 9, 2023, no pet.) (mem. op., not designated for publication) (pointing out the harm to the victim and society when a child is physically assaulted). As to Heather specifically, Sidlauskas's conduct turned her from a "cheerful" child to one that was more reserved and anxious. At the time of trial, she was still undergoing counseling and was fearful that "it would happen again." And Sidlauskas himself stated that, if he saw Heather at his house again, he would go speak to her.

In light of this harm and Sidlauskas's culpability, the overall gravity of his offense was and is significant. *See Bolar*, 625 S.W.3d at 670.

### C. SEVERITY OF SENTENCE

Having concluded that Sidlauskas's offense was quite grave, we must now consider the proportional severity of his twelve-year sentence. *See id.* In doing so, we grant substantial deference to the broad authority that legislatures possess in delineating the punishments for crimes and the discretion granted to trial courts in sentencing convicted criminals. *Id.* (citing *Solem*, 463 U.S. at 290, 103 S. Ct. at 3009).

The statutory punishment range for Sidlauskas's crime was between two and twenty years' confinement. *See* Tex. Penal Code Ann. § 12.33(a). Sidlauskas argues that, because his conduct constituted a "less severe" instance of indecency with a child, it was "common-sense" that his sentence imposed above the midpoint of this

11

penalty range was grossly disproportionate. We disagree. The sentence was well within the range allowable for his offense—one that we have determined to be significantly grave. Indeed, the sentence could have been forty percent more severe. Thus, affording the proper deference due to the legislature and the trial court to create and assess Sidlauskas's punishment, we hold that his sentence was safely inside the Eighth Amendment's proportionality guarantee. We overrule Sidlauskas's sole issue on appeal.

## III.  CONCLUSION

Having overruled Sidlauskas's issue, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  July 27, 2023